No. 47,668

THE STATE OF KANSAS, *ex rel.* SHERRY L. CARRINGTON, *Appellant,*
v. JERRY (JEROME) SCHUTTS, *Appellee.*

(535 P. 2d 982)

Opinion filed May 10, 1975.

*Gary H. Jarchow,* assistant district attorney, argued the cause and *Curt T. Schneider,* attorney general, and *Keith Sanborn,* district attorney, were with him on the brief for appellant.

*Ronald J. Wilkinson,* of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

FATZER, C. J.: This is an appeal from an order of the district court sustaining defendant's motion to dismiss the action for lack of personal jurisdiction in a paternity proceeding brought pursuant to K. S. A. 38-1101, *et seq.*

At issue is whether an act of sexual intercourse between consenting parties which resulted in the conception and birth of a child in the state of Kansas constitutes "[t]he commission of a tortious act within this state" within the meaning of the long-arm statute K. S. A. 60-308 (*b*) (2), so as to give the district court personal jurisdiction over the nonresident putative father in a paternity ac-

tion brought under the provisions of K. S. A. 38-1101 *et seq.*, seeking to adjudge him to be the father of the child and requiring him to support the child.

The action was commenced by the state of Kansas on the relation of Sherry L. Carrington, who alleged she was an unmarried woman and the natural mother of the minor child, Jami Dawn Carrington, born October 12, 1972, to the plaintiff, and that the defendant was the father of the child.

The defendant, Jerry (Jerome) Schutts, had been stationed at McConnell Air Force Base in Wichita, Kansas, and had returned to his home in Wisconsin prior to the filing of this action. On October 15, 1973, a summons for personal service outside of this state was issued by the district court pursuant to K. S. A. 60-308 (*b*). Personal service of summons and a copy of the petition was had upon the defendant on October 19, 1973, in the state of Wisconsin.

The action to determine paternity is brought under the provisions of K. S. A. 38-1101 which reads:

"Upon the sworn complaint of any unmarried woman who is pregnant or the mother of a child a civil action to determine paternity may be brought in the district court against the person who is claimed by the woman to be the father of the child. The action shall be in the name of the state of Kansas, on the relation of the complaining witness. The proceedings shall be governed by the code of civil procedure, unless otherwise provided in this article."

In the event the defendant is adjudged to be the father of the child, K. S. A. 38-1106 provides for an order of support. That statute provides, in part:

"Upon adjudging that the defendant is the father of the child whose paternity is in issue, the court shall make an appropriate order requiring the defendant to provide for the support and education of the child and the payment of the mother's necessary medical expenses incident to the birth of the child. . . ."

As will be observed, there can be no order for child support until after the defendant has been adjudged the father of the child.

The district court sustained the defendant's motion to dismiss the action upon the ground a paternity suit is a personal action requiring personal jurisdiction over the defendant and that the process and service of process were insufficient to give the district court personal jurisdiction over him. The plaintiff-appellant concedes that in a paternity action anything short of personal service upon the putative father would be defective, and since he resides

outside the state of Kansas, personal jurisdiction over him under the code of civil procedure would have to be acquired under the Kansas long-arm statute.

The Kansas long-arm statute, K. S. A. 60-308 (*b*) and (*b*) (2), now K. S. A. 1974 Supp. 60-308 (*b*) (2), provides in part:

"(*b*) Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:"

\* \* \* \* \*

"(2) The commission of a tortious act within this state. . . ."

The defendant-appellee argues that Section 60-308 (*b*) (2) is applicable only where the act which forms the basis of the cause of action results from the commission of a tortious act; that if jurisdiction under 60-308 (*b*) (2) lies, it must be based upon a tortious act in this state and that an act of sexual intercourse, with the consent of both parties resulting in pregnancy need not constitute a tortious act; that there can obviously be no duty to support until after a judicial determination of paternity, or an admission of paternity, and it is fruitless to argue whether failure to support—whether it is a pre-existing duty or not—is a "tortious act" where paternity is neither admitted nor adjudicated.

The question before the court is, can the appellee, a resident of Wisconsin, be made to come to Kansas to defend a bare allegation of paternity—which he denies—under a statute allowing long-arm service of process based upon the alleged commission of a tortious act? We think not.

There is a sharp division in the holdings of other appellate courts which have considered the question of jurisdiction in paternity suits brought by a resident against a nonresident putative father.

In *Poindexter v. Willis*, 87 Ill. App. 2d 213, 231 N. E. 2d 1, the Illinois appellate court found the word "tortious" as used in the Illinois statute, providing that a nonresident who commits a tortious act within that state submits to the state's jurisdiction, was not restricted to the technical definition of a "tort," but includes any act committed in Illinois which involves a breach of duty to another. The court held that a man who purportedly fathered a child while in Illinois and then left the state *and offered no help in response to the mother's letter*, was subject to personal service outside the state,

and to the jurisdiction of the Illinois court under the long-arm statute in a proceeding under the state's paternity act. In the opinion the court stated:

". . . and therefore hold that the word 'tortious' as used in section 17 (1) (b) of said Act is not restricted to the technical definition of a tort, but includes any act committed in this state which involves a breach of duty to another and makes the one committing the act liable to respondent in damages. Therefore, in our opinion, the failure of the father to support an illegitimate child constitutes a tortious act within the meaning of the statute and subjects him to the jurisdiction of the Illinois courts under chapter 110, sections 16 and 17 of the Illinois Civil Practice Act." (pp. 217, 218.)

The supreme court of Minnesota followed a somewhat similar reasoning. In *State ex rel. Nelson v. Nelson,* 298 Minn. 438, 216 N. W. 2d 140, it was held:

"A nonresident putative father of an illegitimate child born to a resident mother, the act of conception having allegedly occurred in this state, may be subjected, pursuant to Minn. St. 543.19, to the jurisdiction of a court in this state upon a complaint of fathering and failing to support the child." (p. 438.)

The supreme court of Tennessee in *Gentry v. Davis,* 512 S. W. 2d 4 [1974], adopted the holding of the Minnesota supreme court in the *Nelson* case, and stated:

". . . We hold that the allegation in appellant's complaint, that appellee committed an act in Tennessee which would render him liable for the support of their offspring, is sufficient to confer upon Tennessee courts personal jurisdiction of the appellee, and that the method of service of process provided by T. C. A. § 20-236 is proper in this case." (p. 6.)

The appellate court of Indiana in *Neill v. Ridner,* 286 N. E. 2d 427 (1972), stated that personal service of summons was proper under the long-arm statute because of the act of "causing personal injury or property damage by an act or omission done within this state" and that there was "no requirement that the act complained of be a tort as it was known at the common law." (pp. 428, 429.)

In the instant case, the parties concede the only act specified in any of the nine determinatives set out in K. S. A. 1974 Supp. 60-308 (b), heretofore quoted, which might relate to the subject matter of paternity alleged in the petition, is subparagraph (2) being "[t]he commission of a tortious act within the state."

The Kansas long-arm statute (60-308) was adopted from the civil code of the state of Illinois and carried with it the construction placed upon it by the supreme court of that state. In *Woodring v. Hall,* 200 Kan. 597, 600, 438 P. 2d 135, we stated:

"As indicated, this controversy focuses upon 60-308 (b) (1). Except for

a few minor changes in language, subsection (*b*) and subparagraphs (1), (2), (3) and (4) thereof were lifted bodily from the Illinois Civil Practice Act of 1955 (Smith-Hurd, Ill. Annot. Statutes, Ch. 110, § 17), by the committee which drafted our Code of Civil Procedure. The provision was wholly new and was based on 'the test of due process laid down in *Internat. Shoe v. Washington*, 326 U. S. 310 90 L. Ed. 95, 66 S. Ct. 154, 161 A. L. R. 1057.' (Smith-Hurd, *op. cit., supra*, Joint Committee Comments, p. 164.) . . ." (l. c. 600.)

\* \* \* \* \*

"This court has recognized and applied the rule that a statute adopted from another state carries with it the construction placed upon it by the courts of that state. (*McHenry v. Hubbard*, 156 Kan. 415, 420, 134 P. 2d 1107.) However, the rule is not absolute and is subject to exceptions not here applicable. . . ." (l. c. 601.)

See, also *Barr, Administratrix v. MacHarg, Administrator*, 203 Kan. 612, 455 P. 2d 516.

One of the exceptions is noted in *State v. Hill*, 189 Kan. 403, 369 P. 2d 365, 91 A. L. R. 2d 750, where we stated:

"This court has recognized and applied the rule that a statute adopted from another state carries with it the construction placed upon it by the courts of that state (*Bemis v. Becker*, 1 Kan. 226; *Stebbins v. Guthrie*, 4 Kan. 353; *Webb v. Comm'rs of Butler Co.*, 52 Kan. 375, 34 Pac. 973; *Nelson v. Stull*, 65 Kan. 585, 68 Pac. 617, 70 Pac. 590; *McHenry v. Hubbard*, 156 Kan. 415, 420, 134 P. 2d 1107), but the rule is not absolute and is subject to exceptions. One exception is that the construction of a statute by the highest court of the original state *after* it is adopted by another has no controlling effect on the adopting state, although it may be persuasive where it is supported by logic and good reasoning. (82 C. J. S., Statutes, § 3173b, p. 867; *State v. O'Donnell*, 116 Kan. 182, 185, 225 Pac. 1078; *McHenry v. Hubbard*, supra.) . . ." (l. c. 409.)

We did not adopt the Illinois long-arm statute with the strained construction more recently placed on the phrase "tortious act" by the Illinois appellate court.

Before the Kansas long-arm statute could become operative in the case now before us, we would have to hold that the act of siring a child is a tortious act committed within the state. The most liberal rules of construction of the phrase "tortious act" would not tolerate the inclusion of an act of sexual intercourse between consenting parties.

Neither can we accept the premise that failure to support is a tortious act within the meaning of the long-arm statute. The father of an illegitimate child has a duty similar to that which is imposed upon the father of a legitimate child but the duty is imposed in those cases of illegitimacy only where the relationship is established by acknowledgment of paternity or the judgment of a court of

record having jurisdiction of the case. Thus, failure to support is only an ancillary issue in a paternity case. The real issue for determination is whether the named defendant is the father of the child. We cannot assume the defendant is the father of the child so that he can be found guilty of a "tortious act" in not supporting the child, and thus give jurisdiction to try the paternity case. We prefer the reasoning of the supreme court of Colorado in *A. R. B. v. G. L. P.,* 180 Colo. 439, 507 P. 2d 468, where it is stated in the opinion:

"The primary issue for determination in a paternity case is whether the alleged father is, in fact, the father. In order to make our long-arm statute operative, it would have to be held that the act of siring a child is a 'tortious act' committed in Colorado. We have considered the numerous definitions of a 'tort' and 'a tortious act' and none of them, by the application of the most liberal rules of construction would tolerate the inclusion of an act of sexual intercourse between consenting adult parties, which, in the absence of allegations showing otherwise, is the nature of the act involved in the paternity case." (pp. 441, 442.)

\* \* \* \* \*

"Petitioner relies heavily upon *Poindexter v. Willis,* 87 Ill. App. 2d 213, 231 N. E. 2d 1 (1967) to support her contention that the trial court did acquire personal jurisdiction of the respondent. That case seems to go off on the premise that *failure to support* was a wrong which the legislature intended to include within the meaning of 'tortious act.' But failure to support is actually only an ancillary issue in a paternity case, where the main question for determination is: Is the respondent the father of the child? If a respondent is found to be the father, then it automatically follows that he has violated his responsibility for support. Therefore, we do not regard *Poindexter* as a suitable case upon which to rely for a resolution of the issue posed here." (p. 442.)

We also note *Mtr. of Anonymous v. Anonymous,* 49 Misc. 2d 675, 268 N. Y. S. 2d 710 (1966), where the appellate court of New York said:

"Obviously, the cause of action at bar did not arise out of the transaction of business or ownership, use and operation of real estate in New York State. If jurisdiction under CPLR 302 lies, it must be based on the commission of a tortious act in this State.

"This proceeding is not one predicated on a tortious act (cf. *Hoard v. U. S. Paint, Lacquer & Chem. Co.,* 44 Misc. 2d 72). An act leading to pregnancy need not constitute a tortious act. Indeed, petitioner indicates the relationship between her and the respondent was voluntary and of comparatively long standing." (p. 676.)

We conclude the petitioner failed to allege a "tortious act" within the meaning of the long-arm statute and there can be no liability

for support of a child born out of wedlock until paternity is adjudicated.

Moreover, and equally compelling to support our conclusion the district court did not have personal jurisdiction in the instant case, is the fact that when the long-arm statute became effective January 1, 1964, the only provision with respect to out-of-state service of summons in a child support case was one where the child was born as a result of a marital relationship. The statute did not provide for out-of-state service of summons in paternity cases. (K. S. A. 60-308 [b] [6], now K. S. A. 1974 Supp. 60-308 [b] [8].)

The long-arm statute was amended in 1971 (L. 1971, ch. 195, § 1) and in 1972 (L. 1972, ch. 221, § 1) by adding other determinatives to give Kansas courts additional grounds for acquiring personal jurisdiction of nonresident defendants for the commission of acts specified in the amendments.

If the district courts of Kansas are to acquire jurisdiction of nonresident putative fathers in paternity actions commenced in this state to establish paternity and to compel support of a minor child, the Legislature should provide for such extraterritorial jurisdiction by proper amendment to our long-arm statute, thus affording the exercise of jurisdiction over such nonresident defendants to the extent permitted by the due process clause of the Fourteenth Amendment to the Constitution of the United States and Sections 1 and 2 of the Kansas Bill of Rights. (*Woodring v. Hall,* supra.)

Before concluding, we point out the appellant is not without a remedy if she cannot effect service of summons within the state. She may proceed pursuant to the provisions of the Uniform Reciprocal Enforcement of Support Act. (K. S. A. 1974 Supp. 23-476.)

Since the petition did not allege a tortious act committed in Kansas, the district court properly held it lacked jurisdiction over the nonresident defendant by virtue of the service of summons upon him under our long-arm statute.

The affirmance of this case is ordered with the understanding the district court dismissed the action without prejudice to the commencement of a future action. (K. S. A. 60-517.)

FROMME, J., not participating.