STATE OF NEBRASKA EX REL. SUSAN LARIMORE,
APPELLANT, V. ROBERT SNYDER, WHOSE CORRECT
NAME IS ROBERT SCHNEIDER, APPELLEE.

291 N. W. 2d 241

Filed April 15, 1980. No. 42727.

Brian J. Waid and Marion Yoder, for appellant.

No appearance for appellee Snyder.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN,
CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

This is a paternity action in which the plaintiff
sought a determination of paternity against the non-
resident defendant and an award of child support
and medical costs. The defendant was personally
served with summons in Missouri, but did not
appear. At a hearing on a motion for default judg-

ment, the District Court for Gage County, Nebraska, determined that the court did not have personal jurisdiction over the defendant and dismissed plaintiff's petition.

The only evidence before the trial court was presented by the plaintiff at a hearing on her motion for default judgment. In 1977, plaintiff was an unmarried woman living in Beatrice, Nebraska, and the defendant was employed in Lincoln, Nebraska, and had been a resident of Nebraska since September 1, 1976. Plaintiff first met the defendant in October 1977, at the home of a friend in Beatrice, Nebraska. Later on the same evening, the plaintiff accompanied the defendant to a motel in Lincoln, Nebraska, where they had sexual intercourse. They returned to Beatrice some time after midnight.

Some time in December 1977, plaintiff discovered that she was pregnant. She advised the defendant of that fact but did not see him thereafter. Plaintiff testified that she had never had sexual relations prior to having intercourse with the defendant in October 1977; that she had not had sexual relations with anyone else; and that defendant was the only person who could be the father of the child. The child was born on August 1, 1978.

After obtaining leave to proceed in forma pauperis, plaintiff filed her petition in this action on October 13, 1978, seeking a judgment that the defendant is the natural father of the child and fixing and directing the payment of child support. The petition alleged that the defendant was a resident of Nebraska. The initial summons for service in Nebraska was returned "Not Found." Thereafter, an alias summons was personally served on the defendant in Missouri on November 2, 1978. The defendant was employed in Missouri and began work on October 23, 1978. Subsequent notices of hearing and appeal were returned unclaimed or undeliverable.

The defendant did not appear in this proceeding

and the plaintiff filed a motion for default judgment. At the hearing on the motion, the court determined that the paternity proceeding here was not a cause of action described in Neb. Rev. Stat. § 25-536 (Reissue 1975), the Nebraska long-arm statute, which authorizes personal jurisdiction under the minimum contacts rule, and dismissed plaintiff's petition.

The sole issue on appeal is whether in personam jurisdiction of a nonresident defendant is acquired in a paternity action by personal service of summons on the putative father in the state of his residence. The plaintiff contends that a proceeding seeking a declaration of paternity and an award of child support is a cause of action arising from an act in this state "causing tortious injury" within the meaning of § 25-536(1)(c), or is a cause of action for failure to provide support within the ambit of the holding in *Stucky v. Stucky*, 186 Neb. 636, 185 N.W.2d 656 (1971). We disagree.

For out-of-state personal service of summons to be valid in obtaining in personam jurisdiction, there must be appropriate statutory authority in the forum state for such service and the constitutional basis of minimum contacts with the forum state must be met. See *Internat. Shoe Co. v. Washington*, 326 U.S. 310 (1945).

Section 25-536 provides:

(1) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:

(a) Transacting any business in this state;

(b) Contracting to supply services or things in this state;

(c) Causing tortious injury by an act or omission in this state;

(d) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in

any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

(e) Having an interest in, using, or possessing real property in this state; or

(f) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(2) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

*Stucky v. Stucky, supra,* involved jurisdiction for purposes of divorce, child custody, and the determination and fixing of amounts of child support and alimony. This court held that domicile alone was sufficient to establish in personam jurisdiction over an absent defendant where personal service of summons was had. In that case some of the same evidence which established the domicile in the forum state also established the contractual and legal duty of marital support and the continuous contacts with the forum state involved in the subsequent performance and breach of that duty. Although *Stucky* applied the minimum contacts concept to marital support cases without reference to any specific subsection of § 25-536, the holding is supported under a reasonable interpretation of more than one subsection of that statute.

Some states have held that, in a paternity case, the alleged failure to fulfill a duty of support by a putative father is alone sufficient to constitute a tort or a tortious injury within the meaning of statutes essentially similar to § 25-536. See, *In re Miller,* 86 Wash. 2d 712, 548 P.2d 542 (1976); *Poindexter v. Willis*, 87 Ill. App. 2d 213, 231 N.E.2d 1 (1967); *State ex rel. Nelson v. Nelson*, 298 Minn. 438, 216 N. W.2d 140 (1974). It is on the basis of the holdings

under this line of authority that the plaintiff seeks to bring the present case within the ambit of *Stucky*.

The other line of judicial authority holds that the primary issue for determination in a paternity case is whether the alleged father is, in fact, the father and that failure to support his alleged child is only an ancillary issue. Those cases hold that the cause of action is not for a tortious act or injury within the meaning of the long-arm statute.

The two lines of authority differ in their treatment of the duty of support. Aside from the factual differences, there is also a distinction between the *Stucky* case and the present case with respect to the support issue. The *Stucky* case involved an action to enforce a duty of support already legally established. The present case is brought to establish paternity and the resulting duty of support which would flow from the legal establishment of paternity. That specific distinction between *Stucky* and the present case is the distinction which separates the two lines of judicial authority with respect to asserting long-arm jurisdiction over nonresident defendants in paternity cases under statutes similar to ours. See, Annot., *Long-Arm Statutes: Obtaining Jurisdiction Over Nonresident Parent in Filiation or Support Proceeding*, 76 A.L.R.3d 708 (1977); Levy, *Asserting Jurisdiction Over Nonresident Putative Fathers in Paternity Actions*, 45 U. Cin. L. Rev. 207 (1976).

The reasoning is persuasive in the cases which hold that an action for a decree of paternity and support is not a cause of action for a tortious act or injury within the meaning of the long-arm statute, and that personal jurisdiction is therefore not acquired. *State, ex rel., v. Schutts*, 217 Kan. 175, 535 P.2d 982 (1975), represents that line of authority. It holds that in a paternity action an act of sexual intercourse between consenting adults does not constitute a "tortious act" so as to authorize personal service of summons on the nonresident putative father under

the Kansas long-arm statute and that failure to support is only an ancillary issue in a paternity case and cannot be considered a "tortious act" under the long-arm statute.

The same result was reached on the same basis in Colorado. In *A.R.B. v. G.L.P.*, 180 Colo. 439, 507 P. 2d 468 (1973), the Colorado court held that, in a paternity action, Colorado courts do not acquire jurisdiction over a nonresident respondent by virtue of personal service in the state of his residence pursuant to the long-arm statute and that an act of sexual intercourse between consenting adults does not constitute a "tortious act" for purposes of the Colorado long-arm statute.

We hold that the failure of a putative father to support his alleged child is only an ancillary issue in a paternity case and is not an act "causing tortious injury" within the meaning of the Nebraska long-arm statute. An act of sexual intercourse between consenting adults does not constitute an act "causing tortious injury" in this state for purposes of the Nebraska long-arm statute. In a paternity action, Nebraska courts do not acquire personal jurisdiction over a nonresident putative father by virtue of personal service in the state of his residence under the Nebraska long-arm statute.

Although Nebraska has constitutional authority to extend its long-arm statutes to include paternity cases such as this, it has not yet done so. The judgment of the District Court was correct and is affirmed.

AFFIRMED.

CLINTON, J., not voting.