[No. 13309–8–I.   Division One.   July 23, 1984.]

*In the Matter of* JANE DOE.

*Robert E. Prince* and *Prince & Woodley,* for petitioner.

*E. Gary Donion,* for respondent.

*Laurence A. Mosler,* for guardian ad litem.

SCHOLFIELD, J.—John[1] seeks reversal of the trial court's order denying his motion to dismiss for lack of personal jurisdiction a petition to establish paternity and obtain child support. We granted discretionary review to consider whether the failure of a putative father to support his child in this state is a "tortious act" within the meaning of our long–arm statute. We reverse the trial court and hold that prior to a judicial determination of paternity, there can be no duty to support and thus no "tortious act".

---

[1]The names of the parties have been changed and the court file sealed to protect the identity of the parties.

Mary was born and raised in Seattle and lived here until the age of 12, when she moved with her family to Arizona. She alleges that she met John in Arizona in 1968 when he was playing winter baseball. She alleges that she and John dated for approximately 3 months, had sexual intercourse on more than one occasion, and that during this period a child was conceived. This child, Jane Doe, was born in Los Angeles, California, in July 1969. Mary and her child moved to Washington in 1973 and have resided and been domiciled here since that time.

John is a professional baseball player. He is a resident and domiciliary of the state of California. His only visits to this state have been when he played for the Seattle Rainiers for 1 month in 1966 (prior to his relationship with Mary) and when he has played against the Seattle Mariners twice per summer since 1980. Mary alleges that John has visited her and her child while on his baseball trips to Seattle. She alleges that he has dined with her and spent time with her daughter. Mary alleges that John has provided gifts to the child, including a ring containing diamond chips, a dollhouse, and a coat. Mary and John agree that he has never provided any financial support for the child.

Mary filed a petition on May 7, 1982 to establish paternity and obtain child support. John was served in Washington while here playing baseball against the Seattle Mariners. John's motion to dismiss the petition for lack of personal jurisdiction was denied.

Although John was personally served while within this state, Mary does not contend that this personal service permits the assertion of personal jurisdiction over him. Nor does she contend that this personal service, together with his trips to this state to play professional baseball, during which he also visited and gave gifts to her and her child, permits the assertion of personal jurisdiction. Rather, she contends that personal jurisdiction may be asserted because a putative father's failure to support his child is a "tortious act" under our long–arm statute, citing *In re Miller,* 86

Wn.2d 712, 548 P.2d 542 (1976).

In *In re Miller,* a mother sought permanent custody of her four children and an award of child support. The court held that there was evidence to show that the father had failed to support the children and that the failure of a parent to support his or her children constituted a tortious act under Washington's long–arm statute. The court held that the assertion of personal jurisdiction over the nonresident, nondomiciliary father did not violate due process under the circumstances.

Mary contends that the court in *In re Miller* adopted the approach taken in *State ex rel. Nelson v. Nelson,* 298 Minn. 438, 216 N.W.2d 140 (1974). In that case, the Minnesota court held that personal jurisdiction may be asserted in a paternity action based upon allegations of paternity and nonsupport. The court held that a putative father's failure to support his child constitutes a tort under Minnesota's long–arm statute.

The court in *In re Miller* held that a *parent's* failure to support his or her children constitutes a "tortious act" under Washington's long–arm statute. The issue of a *putative* parent's duty to support was not before the court. *In re Miller* involved a dispute over custody, not paternity. Although the father had been personally served in Idaho, he failed to respond to the summons and petition and to the notice of intent to take default. Thus, he never denied that he was in fact the natural father of the children. Also, he had delivered the four children to their mother's home in Stevens County. Thus, either he was in fact the father of the children or he had voluntarily assumed the responsibility for their support.

In this case, John denies that he is the father of the child. In addition, Mary does not contend that John has voluntarily assumed responsibility for the child's support; the sole basis of her allegation that he has a duty of support is that he is the child's father.

*In re Miller* is not dispositive because the issue of whether John is indeed the father of the child has not yet

been decided. The primary issue in a paternity action is whether the defendant is in fact the father; the issue of support is ancillary. If John is not the father, he has no duty of support. Without a duty of support, he could not have committed the "tortious act" of nonsupport. We hold that a putative father's failure to support his child does not constitute a "tortious act" under our long–arm statute. *See State ex rel. Carrington v. Schutts*, 217 Kan. 175, 535 P.2d 982, 984–85 (1975); *State ex rel. Larimore v. Snyder*, 206 Neb. 64, 291 N.W.2d 241, 244 (1980); *Barnhart v. Madvig*, 526 S.W.2d 106, 108 (Tenn. 1975); *A.R.B. v. G.L.P.*, 180 Colo. 439, 507 P.2d 468, 469 (1973).

Mary alleges no other basis upon which personal jurisdiction may be asserted in this case.[2] We reverse the trial court's order and dismiss without prejudice her petition to establish paternity and obtain child support.[3]

DURHAM, C.J., concurs.

ANDERSEN, J. (dissenting)—This paternity action brought by the mother and guardian ad litem of a child born out of wedlock comes before us at a very preliminary stage of the proceedings. Based on the record before the trial court, that court denied the putative father's motion challenging the court's personal jurisdiction over him. We granted discretionary review of that decision. I would affirm the trial court's ruling and permit the case to proceed in the usual course.

---

[2]We do not reach the issue of whether, even if John's alleged failure to support the child in Washington were a "tortious act", the assertion of personal jurisdiction would violate due process because his contacts with this state are insufficient.

[3]Mary is not without a remedy, however. Both Washington and California (John's residence) have adopted versions of the uniform reciprocal enforcement of support act. RCW 26.21.010 *et seq.*; Cal. Civ. Proc. Code § 1650 *et seq.* (West Supp. 1980). Under this statute, Mary may file a petition for paternity and child support in Washington and have its merits adjudicated in California without the parties' having to leave their own states. RCW 26.21.080, .090, .092, .100; Cal. Civ. Proc. Code §§ 1672, 1673, 1676, 1680, 1682, 1695.

It is the law of this jurisdiction that

"[w]here a judgment or order is correct it will not be reversed merely because the trial court gave wrong or insufficient reason". *Pannell v. Thompson,* 91 Wn.2d 591, 603, 589 P.2d 1235 (1979). When the facts and law indicate an appropriate reason for the trial court's decision we must affirm the trial court on the basis of the applicable law, "even though the attorneys representing the parties are unable or unwilling to argue it." *Maynard Inv. Co. v. McCann,* 77 Wn.2d 616, 623, 465 P.2d 657 (1970).

*Keogan v. Holy Family Hosp.,* 95 Wn.2d 306, 317, 622 P.2d 1246 (1980).

In the case before us, I would hold that when personal service of process was obtained on the putative father in this state, the courts of the State of Washington acquired jurisdiction over his person.

Although for many years it was considered black letter law that any presence in this state, however casual or transitory, was generally sufficient to support personal jurisdiction over a person served with lawful process within the borders of the state, *see Pennoyer v. Neff,* 95 U.S. 714, 24 L. Ed. 565 (1878); 2 L. Orland, Wash. Prac. § 8, at 6 (1972), the matter appears to no longer be that simple.

In 1977, the United States Supreme Court in *Shaffer v. Heitner,* 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569 (1977) overruled its 100–year–old landmark decision in *Pennoyer. Shaffer* held that all assertions of state court jurisdiction must be evaluated according to the constitutional standards set forth in *International Shoe Co. v. Washington,* 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945), notably that for jurisdiction to exist over a nonresident defendant, the defendant must have certain minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Shaffer,* at 212. *See* Olsen, *Shaffer v. Heitner: A Survey of its Effects on Washington Jurisdiction,* 13 Gonz. L. Rev. 72, 83–84 (1977); 2 L. Orland, Wash. Prac. § 8 (1972 & 1983 pocket

part).

The record in this case reflects that the putative father was not just passing through the State of Washington at the time he was personally served with summons and complaint herein. He is a major league baseball player who, although domiciled elsewhere, earns his living playing baseball in various states including the State of Washington. At the time he was served with process he was staying in a Seattle hotel while his team was playing the Seattle major league baseball team. He had been coming to this state for that purpose on a couple of occasions each summer for several years. Thus, when served, he was in this state earning his livelihood. On his various trips to Seattle, he would sometimes also visit the mother and child who live in Seattle and would bring gifts for the child.

In my view, the defendant thus had sufficient minimum contacts with the State of Washington, as well as with the mother and the child herein, that requiring him to appear and defend this paternity action in the courts of this state would not offend traditional notions of fair play and substantial justice.

I would affirm and remand for trial.

Reconsideration denied September 6, 1984.