522 So.2d 838 (1988)
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, the State of Florida ex rel. Mary Luke, Petitioners,
v.
Raymond Dell WRIGHT, Respondent.
No. 69050.
Supreme Court of Florida.
April 14, 1988.
*839 Joseph R. Boyd and William H. Branch of Boyd and Thompson, P.A., Tallahassee, and Chriss Walker, Dept. of Health and Rehabilitative Services, Tallahassee, for petitioners.
John S. Morse of Yado, Salem, Keel, Nelson & Bergmann, P.A., Tampa, for respondent.
Glen Rafkin of Young, Stern & Tannenbaum, p.A., North Miami Beach, amicus curiae for John B. Howenstine.
PER CURIAM.
We have for review Department of Health and Rehabilitative Services v. Wright, 489 So.2d 1148 (Fla. 2d DCA 1986), in which the district court upheld the dismissal of a paternity and child support action against an out of state putative father on the ground that the court lacked personal jurisdiction over the putative father. Because that holding directly and expressly conflicts with the first district's holding in Bell v. Tuffnell, 418 So.2d 422 (Fla. 1st DCA 1982), rev. denied, 427 So.2d 736 (Fla. 1983), we have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We approve the decision of the second district below and, to the extent that it conflicts with this opinion, we disapprove of the first district's holding in Bell.
Mary Luke, a resident of Florida, was visited by her boyfriend, Raymond Wright, in December of 1983. Just over eight months later a son was born to Luke. Wright, a member of the armed forces of the United States, is not a resident of Florida, but rather lives in Idaho. The Florida Department of Health and Rehabilitative Services (HRS) filed a paternity action in circuit court alleging that Wright was the father of Luke's son and that Wright owed child support to that child. Wright specially appeared, challenging the complaint on grounds that the court lacked personal jurisdiction over him pursuant to Florida's long-arm statute, section 48.193, Florida Statutes (1983). The trial court dismissed the complaint and the district court affirmed.
Section 48.193(1), Florida Statutes, provides in pertinent part:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits that person and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following:
... .
(b) Commits a tortious act within this state.
... .
(e) With respect to proceedings for alimony, child support, or division of property in connection with an action to dissolve a marriage or with respect to an independent action for support of dependents, maintains a matrimonial domicile in this state at the time of the commencement of this action or, if the defendant resided in this state preceding the commencement of the action, whether cohabiting during that time or not. This paragraph does not change the residency requirement for filing an action for dissolution of marriage.
*840 Because Wright and Luke did not share a matrimonial domicile in Florida and because Wright did not reside in this state prior to the commencement of this action, by its clear terms, section 48.193(1)(e) does not allow jurisdiction over Wright in this case. Thus, any traditional means of bringing this defendant within the jurisdiction of the courts of this state are not available. HRS alleges that Wright, in failing to pay child support, breached a duty imposed by law and therefore committed a tortious act within the meaning of section 48.193(1)(b).
Wright contends that no tortious conduct could have occurred because no duty had yet been placed on him. He argues that until paternity is adjudicated in court he is under no duty to pay child support and thus committed no tort. We agree. To saddle a defendant with the burden of child support before paternity has been established would be both illogical and unjust. As the second district stated below, "[a] court cannot, as an initial matter, assume that a defendant is the father of a child so that it can adjudicate the matter of nonsupport, and upon finding nonsupport, use such `tortious' conduct as the basis of jurisdiction to adjudicate paternity." 489 So.2d at 1150-51.
We find this reasoning persuasive. Several states which have analyzed this type of situation under similar long-arm statutes have reached the same conclusion. See, e.g., Lightell v. Lightell, 394 So.2d 41 (Ala. Civ. App. 1981); A.R.B. v. G.L.P., 180 Colo. 439, 507 P.2d 468 (1973); State ex rel. Carrington v. Schutts, 217 Kan. 175, 535 P.2d 982 (1975); State ex rel. Larimore v. Snyder, 206 Neb. 64, 291 N.W.2d 241 (1980); Anonymous v. Anonymous, 104 Misc.2d 611, 428 N.Y.S.2d 608 (N.Y. Fam. Ct. 1980). These courts reason that failure to provide child support is only an ancillary issue in the paternity proceeding with the primary issue being paternity itself. As did the second district, we accept this reasoning.
We recognize that an equal number of states that have addressed this issue have adopted the reasoning advocated by HRS. These cases hold that the allegation of failure to provide child support is sufficient to constitute a "tortious act" within the meaning of their respective long-arm statutes. They reason that while a duty normally arises when paternity is established, for long-arm jurisdiction purposes, allegations of paternity give rise to tortious conduct. See, e.g., Poindexter v. Willis, 87 Ill. App.2d 213, 231 N.E.2d 1 (1967); Neill v. Ridner, 286 N.E.2d 427 (Ind. App. 1974); Larson v. Scholl, 296 N.W.2d 785 (Iowa 1980); State v. King, 447 So.2d 557 (La. Ct. App. 1984); Black v. Rasile, 113 Mich. App. 601, 318 N.W.2d 475 (1980); State ex rel. Nelson v. Nelson, 298 Minn. 438, 216 N.W.2d 140 (1974); Gentry v. Davis, 512 S.W.2d 4 (Tenn. 1974); In re Custody of Miller, 86 Wash.2d 712, 548 P.2d 542 (1976).
We decline to follow this line of cases. Failure to pay child support cannot be considered a tort until a duty to provide such support has been established by law. In this case it is clear that no such duty has been established. Furthermore, consensual sex also does not amount to tortious activity. Paternity must be adjudicated against the putative father before he may be held accountable for child support in Florida. Section 48.193(1)(b) cannot apply until a duty has been imposed. Clearly, if the legislature had intended to address this issue, it would have done so in section 48.194(1)(e), which pertains directly to actions in child support. If the legislature acknowledges any problem in this area it will address it. Until then, we are bound by the limitations of the statute. Accordingly, we approve the decision of the second district and disapprove, to the extent that it conflicts with this opinion, the first district's decision in Bell.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW and GRIMES, JJ., concur.
KOGAN, J., dissents with an opinion in which BARKETT, J., concurs.
KOGAN, Justice, dissenting.
Respectfully, I dissent from the majority opinion. Today the Court closes off a *841 cause of action stemming from a breach of duty without providing any means of litigating that breach. By declining to attach to this action the label of "tort," the majority reverts to a traditional, but unjustly limited definition of a cause of action grounded in tort. While this restrictive view is logically seductive, it is legally indefensible.
At common law, the failure to provide support to one's child did not necessarily constitute a tort. Nonetheless, the legislature has statutorily made it an affirmative duty on the part of the father to support and maintain his child. § 409.2551 Fla. Stat. (1985). The failure to do so gives rise to a cause of action for damages or, if necessary, equitable relief. None would question today that the breach of the duty to pay child support vests some litigation rights in the child. While it may not be considered a "tort" under the common law definition, such an action contains all the characteristics of modern tortious conduct.
Under most modern definitions of a tort, the cause of action at bar certainly constitutes such an action. A tort is the breach of a duty imposed by law which results in reasonably foreseeable damages. See W. Prosser & W. Keaton, Prosser on Torts, 164-165 (5th ed. 1984). The fact that the duty has been imposed by statutory rather than common law is of absolutely no consequence. Such a distinction incorrectly ignores the basic tenets of the concept of duty. Legislatures as well as courts may impose duties and the breach of that duty, no matter who imposed it, must give rise to a cause of action. Under the majority's decision, it does not.
The majority opinion hides behind a "cart before the horse" analysis to hold that this duty cannot exist until it has been adjudicated by a court. The Court reasons that the duty to pay child support cannot arise until paternity has been established. It is not a requirement of any action founded in tort that the duty be adjudicated by a finder-of-fact before the breach thereof is determined. Separate proceedings for paternity and child support have never been required until now. As with any cause of action whether it is founded in tort, contract, or some other species of litigation, the elements of that cause need not be proved until trial. It is sufficient to simply allege those elements in the pleadings to survive summary judgment or any judgment on the pleadings. Trawick, Florida Practice and Procedure, 61 (1985).
Paternity and child support are interwoven, symbiotic causes of action. The one is a necessary correlative of the other. Neither is ancillary, as the second district and the majority suggest. The support of the child is, and always has been, the paramount goal of both paternity and child support actions. Kendrick v. Everheart, 390 So.2d 53, 56 (Fla. 1980). The majority's decision frustrates that goal.
Long-arm jurisdiction, like the elements of the tort, need not be factually adjudicated prior to the actual trial on the child support issue. It is sufficient to allege such jurisdiction in the pleadings. If such allegations sufficiently vest the court with jurisdiction, the court must proceed to the litigation of those facts in issue. Because HRS alleged paternity in its pleadings, the trial court had jurisdiction to litigate the cause of action. Additionally, HRS alleged a failure to pay child support, a duty that arises from paternity. Jurisdiction need only be alleged in the pleadings to survive a judgment on the pleadings. HRS then shoulders the burden of proving those allegations and can only succeed in the action if it successfully carries that burden beyond the appropriate standard of proof.
Were this Court to follow the reasoning alleged by HRS, it would surely not be the first time a court travelled this road. Indeed, approximately half of the jurisdictions that have examined this issue have found that the allegation of paternity and failure to provide child support is sufficient to invoke long-arm jurisdiction to enforce the child support obligations. Poindexter v. Willis, 87 Ill. App.2d 213, 231 N.E.2d 1 (1967); Neill v. Ridner, 286 N.E.2d 427 (Ind. App. 1974); Larsen v. Scholl, 296 N.W.2d 785 (Iowa 1980); State v. King, 447 So.2d 557 (La. Ct. App. 1984); Black v. Rasile, 113 Mich. App. 601, 318 N.W.2d 475 *842 (1980); State ex rel. Nelson v. Nelson, 298 Minn. 438, 216 N.W.2d 140 (1974); Gentry v. Davis, 512 S.W.2d 4 (Tenn. 1974); In re Custody of Miller, 86 Wash.2d 712, 548 P.2d 542 (1976). The courts in these jurisdictions realize that what may not have been considered a "tort" when the American justice system was born, must necessarily be considered one in order to fulfill the needs of a modern, complex society. These states' courts understand that a legal system must necessarily be dynamic in order to survive. Reliance on static, inflexible principles based solely on tradition reflects an inability to adapt to needs of present and future legal or moral problems.
The majority's adherence to outdated and limited concepts ignores the general, overriding policy of insuring that support is provided to children. Under modern thought, it is no longer the child that is "illegitimate," but rather the father who has acted illegitimately. The majority opinion discards this updated and more reasonable line of thought by forcing the child to chase the father to Idaho to litigate paternity. It is far more fair and within reason to allow Florida courts to do so. For these reasons, I dissent.
BARKETT, J., concurs.