**Theresa BALDWIN, Plaintiff and Respondent,**

v.

**Carl EASTERLING, Defendant and Appellant.**

No. 20361.

Supreme Court of Utah.

May 13, 1988.

Michael L. Deamer, Salt Lake City, for defendant and appellant.

Paul H. Van Dyke, Salt Lake City, for plaintiff and respondent.

HOWE, Associate Chief Justice:

We granted this interlocutory appeal to review the trial court's denial of a motion by defendant to dismiss for lack of jurisdiction.

Plaintiff Theresa Baldwin filed this action alleging that she is a resident of Salt Lake County, Utah, and that defendant Carl Easterling is a resident of Pennsylvania but is subject to the jurisdiction of this state's courts pursuant to Utah Code Ann. § 78–27–24 (1987), Utah's long-arm statute. That section provides so far as pertinent here:

> Any person, notwithstanding section 16–10–102, whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any claim arising from:
>
> . . . .
>
> (3) The causing of any injury within this state whether tortious or by breach of warranty;
>
> . . . .
>
> (7) The commission of sexual intercourse within this state which gives rise to a paternity suit under Chapter 45a, Title 78, to determine paternity for the purpose of establishing responsibility for child support.

Baldwin's complaint states two causes of action: first, that Easterling is the father of her unborn child and is liable for the expenses of her pregnancy and confinement and for the education and support of the child when born pursuant to Utah Code Ann. § 78–45a–1 (1987), which obligates the father of an illegitimate child to pay those expenses; and second, that Easterling intentionally and maliciously made a false promise to Baldwin that he would marry her and support her, and upon the strength of that promise, she became pregnant by him. For this breach, she seeks $50,000 compensatory and $50,000 punitive damages.

Easterling moved to dismiss the complaint for lack of personal jurisdiction. His affidavit in support of his motion stated that he had not been in Utah during the previous ten years. He contended that Utah could not assert jurisdiction over him pursuant to section 78–27–24(7), which confers long-arm jurisdiction on Utah courts over claims arising from "the commission of sexual intercourse within this state," since the act of intercourse that gave rise to this lawsuit did not occur in this state.

Baldwin did not dispute Easterling's assertion that he had not been in Utah for ten years and that the court did not have jurisdiction over him under section 78–27–24(7). Rather, she argued that the court had personal jurisdiction pursuant to section 78–27–24(3), which confers jurisdiction over claims arising from "the causing of any injury within this state whether tortious or by breach of warranty." Her affidavit sets forth the following: She met Easterling in December 1983 in Pennsylvania and, in January 1984, moved into his house in that state and shortly thereafter became pregnant by him. She was seventeen years old, and he was thirty-five. In May 1984, Easterling told her it would be beneficial to their relationship if she temporarily stayed with her mother in Utah, and he purchased a plane ticket to Utah for her. He also told her that he would provide her with return transportation to Pennsylvania after a short while and that he would support her and the child. She left Pennsylvania at his insistence and came to Utah, expecting that he would provide return transportation prior to the birth of the child. While she was in Utah, he telephoned her and discussed his plans for her return. However, he did not provide return transportation to Pennsylvania and did not pay for the medical expenses of her pregnancy.

The trial court, relying on *Poindexter v. Willis*, 87 Ill.App.2d 213, 231 N.E.2d 1 (1967), denied Easterling's motion to dismiss. *Poindexter* was a paternity action commenced in Illinois against a nonresident defendant on the theory that the defendant had committed a tort in the state. The court held that the word "tortious" in the Illinois long-arm statute included a nonresi-

dent's breach of duty owed to a resident which caused damage and that the failure to support an illegitimate child was such a breach. *Id.* 231 N.E.2d at 3. That theory (that the failure to support is a tort) was followed in *Bell v. Tuffnell*, 418 So.2d 422 (Fla.Dist.Ct.App.1982); *State ex rel. Nelson v. Nelson*, 298 Minn. 438, 216 N.W.2d 140 (1974); *Gentry v. Davis*, 512 S.W.2d 4 (Tenn.1974); *Neill v. Ridner*, 153 Ind.App. 149, 286 N.E.2d 427 (1972); *State v. Hartling*, 360 N.W.2d 439 (Minn.Ct.App.1985); and *Black v. Rasile*, 113 Mich.App. 601, 318 N.W.2d 475 (1980).

In *Poindexter* and in the first four cases just cited above, the sexual intercourse occurred in the forum state. Under our statutory scheme, this would be sufficient to confer jurisdiction without reliance on the so-called tortious conduct of failure to support which was relied on in those cases. Other courts have refused to follow the *Poindexter* rule, when the sexual intercourse occurred either within or without the state, on the ground that the failure to support cannot be a tort until paternity which gives rise to the duty to support has been established. These courts further hold that even when the sexual intercourse occurs in the state, it is not a tort when it involves two consenting adults. *State ex rel. Garcia v. Dayton*, 102 N.M. 327, 695 P.2d 477 (1985); *State ex rel. Larimore v. Snyder*, 206 Neb. 64, 291 N.W.2d 241 (1980); *State ex rel. Carrington v. Schutts*, 217 Kan. 175, 535 P.2d 982 (1975); *Barnhart v. Madvig*, 526 S.W.2d 106 (Tenn.1975); *A.R.B. v. G.L.P.*, 180 Colo. 439, 507 P.2d 468 (1973); *Anonymous v. Anonymous*, 49 Misc.2d 675, 268 N.Y.S.2d 710 (N.Y.Fam.Ct.1966). In *People v. Flieger*, 125 Ill.App.3d 604, 80 Ill.Dec. 739, 465 N.E.2d 1376 (1984), the Illinois Court of Appeals in another district declined to follow *Poindexter* where the sexual intercourse took place outside Illinois. The court stated that until it has been established that the defendant is the father of the child, there can be no legal duty on his part to support and, therefore, jurisdiction could not be gained over him on the ground that he had committed a tort of non-

support. For additional cases, see Annotation, *Long Arm Statutes: Obtaining Jurisdiction Over Nonresident Parent in Filiation or Support Proceeding*, 76 A.L. R.3d 708 (1977).

■ Clearly, in Utah the choice between these two divergent lines of cases has been made by the legislature. It has provided in section 78–27–24(7) that a nonresident submits himself to the jurisdiction of the courts of this state in a paternity suit under section 78–45a–1 for the purpose of establishing responsibility for child support when he has engaged in sexual intercourse within this state. By negative implication, it follows that when the intercourse occurs outside this state, as it did in the instant case, the legislature did not intend to subject the nonresident to our jurisdiction in the absence of other contacts by him with our state. A serious due process question would have arisen had there been any such attempt. *Barnhart v. Madvig, supra.*

■ Baldwin contends that even though the intercourse took place outside of Utah and that jurisdiction cannot be gained by section 78–27–24(7), the trial court had jurisdiction over Easterling under section 78–27–24(3), which confers jurisdiction over a nonresident when he has caused any injury within this state, whether tortious or by breach of warranty. She argues that Easterling sent her to this state under false pretenses as part of his scheme to avoid paying child support and that while the fraud was practiced upon her in Pennsylvania, the effects of it are felt by her in this state. We cannot agree with this long stretch of reasoning and allow section 78–27–24(7) to be so easily circumvented. Assuming that Easterling's broken promise to provide her return air fare to Pennsylvania, where he would marry her and support the child could constitute actionable misrepresentation, her paternity claim against him does not arise out of his contacts with this state, i.e., sending her to Utah. She had been pregnant several months before Easterling purportedly made that promise to her. She does not claim that she became pregnant because of any misrepresentation about the return

trip. Section 78–27–24 provides that a nonresident submits himself to the jurisdiction of the Utah courts "as to any claim arising from" the acts there enumerated. Baldwin's paternity claim does not "arise from" any misrepresentation regarding payment of return air fare. *See Roskelley & Co. v. Lerco, Inc.*, 610 P.2d 1307 (Utah 1980); *Whisenant v. Whisenant*, 219 Kan. 387, 548 P.2d 470 (1976). She had the paternity claim months before any misrepresentation occurred. Therefore, she cannot bootstrap onto any claim for misrepresentation her separate and distinct statutory paternity action. Jurisdiction over a nonresident for one claim of a plaintiff does not generally confer jurisdiction over the nonresident for other claims that plaintiff may have. *See Whalen v. Young*, 15 N.J. 321, 104 A.2d 678 (1954). Baldwin does not seek in this action the cost of return air fare to Pennsylvania, which damage she arguably sustained on account of his misrepresentation. Thus, we express no opinion on any right she may have to recover it.

■ Baldwin's second cause of action for breach of promise to marry fares no better. Obviously, it is not a claim for an injury arising from a tort or breach of warranty. § 78–27–24(3). The trial court's order denying Easterling's motion to dismiss is reversed, and the case is remanded with directions to grant his motion.

HALL, C.J., and DURHAM and ZIMMERMAN, JJ., concur.

STEWART, J., dissents.