515 N.W.2d 680 (1994)
2 Neb.App. 820
STATE of Nebraska, DEPARTMENT OF SOCIAL SERVICES, on Behalf of Tammy YANKTON, Appellee,
v.
Nicholas A. CUMMINGS, Appellant.
No. A-93-149.
Court of Appeals of Nebraska.
May 3, 1994.
*682 Jerry Matthews, Chardon, for appellant.
John S. Burbridge, Gordon, for appellee.
HANNON and MILLER-LERMAN, JJ., and WARREN, District Judge, Retired.
WARREN, District Judge, Retired.
This is a paternity action in which the Department of Social Services (Department) sought a determination of paternity against the nonresident defendant, Nicholas A. Cummings, and an award of child support and medical expenses. Cummings was personally served with a summons in South Dakota and filed a special appearance with the court, alleging that the court had no personal jurisdiction over him. The court denied his special appearance and gave Cummings 20 days to file an answer. No answer was filed, and the Department made a motion for default judgment based on Cummings' failure to answer. The court granted the Department's motion and held a hearing to determine the amount of support to be ordered. Upon the hearing, the district court determined that Cummings should pay $265 per month in support of the minor child. Cummings appealed the district court's order. We hold that the district court had personal jurisdiction over Cummings and properly rendered a default judgment against Cummings.

I. STATEMENT OF FACTS
In June 1992, the Department of Social Services filed an action to determine the paternity of Tammy Yankton and to obtain an order of support for the child. Tammy's mother, Debbie Yankton, had filed a written application for financial assistance for the minor child with the Department. The Department alleged in its petition that the minor child was conceived in the State of Nebraska as a result of sexual intercourse between Debbie and Cummings and that such minor child was born in November 1979 and now resides with her mother in Sheridan County. Personal service was had on Cummings in South Dakota. Cummings then filed a special appearance with the court, alleging that the court lacked personal jurisdiction over Cummings under Nebraska's long-arm statute, Neb.Rev.Stat. § 25-536 (Reissue 1989). The court held a hearing regarding the special appearance and overruled Cummings' request to dismiss the action for lack of jurisdiction. The court gave *683 Cummings 20 days in which to file an answer in the action; however, no answer was filed. As a result, the Department entered a motion for default judgment. A hearing was held, and the court found that Cummings had been served with process, but had not answered, and therefore was in default of appearance or pleading. Therefore, the court rendered judgment on the pleadings and set a hearing to determine the amount of child support Cummings must pay. Upon such hearing, the court determined that Cummings must pay $265 per month in child support.

II. ASSIGNMENTS OF ERROR
Cummings alleges that the district court erred when it (1) overruled Cummings' special appearance, (2) determined that Cummings was the father of the minor child with no evidence submitted in support of the petition, and (3) ordered support in the matter when it lacked jurisdiction. The first and third assignments are essentially the same; therefore, we will address whether the district court had jurisdiction over Cummings and whether it properly rendered default judgment.

III. STANDARD OF REVIEW
When a jurisdictional question does not involve a factual dispute, determination of the jurisdictional issue is a matter of law, which requires an appellate court to reach a conclusion independent from the trial court's conclusion on the jurisdictional issue. See 24th and Dodge Ltd. v. Commercial Nat. Bank, 243 Neb. 98, 497 N.W.2d 386 (1993).

IV. ANALYSIS

1. PROPER JURISDICTION IN SHERIDAN COUNTY
The narrow question presented is whether Nebraska's long-arm statute provides for in personam jurisdiction over a presently nonresident party to a paternity action when the child was conceived in Nebraska and the child currently resides with its mother in Nebraska. Nebraska's long-arm statute, § 25-536, provides: "A court may exercise personal jurisdiction over a person ... (2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States." The Nebraska Supreme Court has found that "[i]t is quite apparent from the language of the section, `to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States,' that it was the intention of the Legislature to provide for the broadest allowable jurisdiction over nonresidents." York v. York, 219 Neb. 883, 885, 367 N.W.2d 133, 135 (1985). We note that Cummings cites State ex rel. Larimore v. Snyder, 206 Neb. 64, 291 N.W.2d 241 (1980), in support of his argument that the Nebraska courts have no jurisdiction over his person. In State ex rel. Larimore, a paternity action, the plaintiff attempted to establish personal jurisdiction over a nonresident by claiming that sexual intercourse, which resulted in pregnancy, was a tortious act. The court found that the act of sexual intercourse was not a tortious act and that the Nebraska courts had no jurisdiction over the nonresident defendant. However, State ex rel. Larimore was based on the original long-arm statute, § 25-536, before it was amended in 1983 to add the current broad provision which exercises jurisdiction over any person who has any other contact with the state to afford a basis for the exercise of personal jurisdiction consistent with the U.S. Constitution. State ex rel. Larimore, therefore, is inapplicable to the case at hand.
The York court found that the constitutional restriction on a state's power to obtain in personam jurisdiction is twofold: (1) that the defendant be given adequate notice and (2) that the defendant be subject to the personal jurisdiction of the court. In the case at hand, there is no question of adequate notice because Cummings was personally served in South Dakota, where he resides, and responded by filing a special appearance. Therefore, we must determine whether Cummings has minimum contacts with the State of Nebraska so as to subject himself to the jurisdiction of its courts. See, York, supra; Internat. Shoe Co. v. Washington, *684 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
The Nebraska Supreme Court has found that to determine whether a court has personal jurisdiction over a nonresident defendant, one must examine the quality and nature of the nonresident's activities and ascertain that the nonresident has sufficient minimum contacts with the forum state to satisfy the requisite due process for exercise of jurisdiction. See Williams v. Gould, Inc., 232 Neb. 862, 443 N.W.2d 577 (1989). In Williams, the court found:
Fairness and reasonableness, essential to due process in personal jurisdiction over a nonresident defendant, require that the defendant's contact with the forum state must be of a quality and nature that the defendant `should reasonably anticipate being haled into court' in the forum state....
A defendant's purposeful act, directed to the forum state, not merely the unilateral activity of another who claims a relationship to the defendant, connects the defendant to the forum state.
(Citations omitted.) Id. at 876-77, 443 N.W.2d at 587. In addition, the Williams court found that
[a]fter the extent and nature of the nonresident defendant's contacts are analyzed, the court may apply other facts bearing on reasonableness and fairness in requiring the nonresident to defend a suit in Nebraska, such as the defendant's burden in the Nebraska litigation, Nebraska's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and efficient relief, the judicial system's interest in the efficient resolution of controversies, and the shared interest of the states in furthering fundamental substantive social policies.
Id. at 878-79, 443 N.W.2d at 588.
The court in In re Paternity of C.A.K., 159 Wis.2d 224, 464 N.W.2d 59 (Wis. App.1990), found that the defendant had minimum contacts with Wisconsin because he engaged in sexual intercourse with the mother of the child in Wisconsin. The court found that "[t]he act is the reason why he is the respondent. Nothing suggests that his intercourse with D. was other than voluntary and intentional and therefore purposeful. He must have known when he had intercourse that his act created the potential for parenthood." Id. at 228, 464 N.W.2d at 61. The court in Larsen v. Scholl, 296 N.W.2d 785 (Iowa 1980), found that the Iowa courts had jurisdiction over a Nebraska resident in an action regarding paternity and support. The Nebraska resident had engaged in sexual intercourse in Iowa with the mother. The Iowa long-arm statute at issue in Larsen contained the same broad provision as Nebraska's long-arm statute. The defendant in Larsen had entered a special appearance and claimed the court had no jurisdiction over his person. The court found that the defendant had engaged in sexual intercourse with the mother in Iowa at various times during a 2-month period, with the mother, which resulted in pregnancy. The court found: "Thus several contacts in Iowa were involved. The nature and quality of these contacts, involving the siring of a child, are obvious, as is the nexus between these acts of intercourse and this action to establish paternity and provide support for the resulting child." Id. at 790. See, also, County of Humboldt v. Harris, 206 Cal.App.3d 857, 254 Cal.Rptr. 49 (1988) (holding that act of sexual intercourse in California which resulted in mother of child's pregnancy established sufficient minimum contacts with California); Barber v. Profit, 576 So.2d 1168 (La.App.1991) (holding that conception of child in Louisiana established sufficient minimum contacts necessary for Louisiana courts to assert personal jurisdiction over defendant); Jones v. Chandler, 592 So.2d 966 (Miss.1991) (holding that Mississippi courts had jurisdiction over defendant where conception took place in Mississippi). We find that Cummings' act of sexual intercourse with Debbie which resulted in the conception of Tammy in Nebraska shows sufficient minimum contacts with Nebraska so that Nebraska's courts have jurisdiction over Cummings, so long as that jurisdiction is fair and reasonable.
As we have decided that Cummings' act of sexual intercourse resulting in conception in Nebraska shows sufficient minimum contacts with the forum state for jurisdiction to attach in this case, we must then decide *685 whether it is fair and reasonable to require Cummings to defend himself in Nebraska. Cummings' contact with Nebraska must be of a quality and nature that he should reasonably anticipate being haled into a Nebraska court. See Willims v. Gould, Inc., 232 Neb. 862, 443 N.W.2d 577 (1989). There is a direct cause and effect between Cummings' Nebraska contacts, that is, sexual intercourse, and the resulting child born in Nebraska to a Nebraska mother. See Larsen v. Scholl, supra. We find that Cummings' act of sexual intercourse in Nebraska with a Nebraska resident was indeed a purposeful act within Nebraska which is of a nature that he should have reasonably anticipated being haled into a Nebraska court when he had sexual intercourse in Nebraska, sired a child, and then failed to pay child support.
Nebraska has an obvious interest in this litigation, as it is currently supporting the child. Nebraska statutes require that whenever an application for financial assistance is filed with the Department by a parent, it is the duty of the county attorney to take legal action against the nonsupporting parent of the child. Neb.Rev.Stat. § 43-512.01 (Reissue 1988). The statutes further provide that the application for and acceptance of aid to dependent children payments constitutes an assignment of rights to child support payments and arrearages to the Department. Neb.Rev.Stat. § 43-512.07 (Cum.Supp.1992).
The convenience of the parties and Cummings' burden to defend himself in Nebraska also point to the fairness and reasonableness of haling Cummings into a Nebraska court. Cummings lives in a county abutting Nebraska's northern border, and the suit was filed in a northern Nebraska county. It would not be a major inconvenience for Cummings to appear for trial in Nebraska. Potential witnesses who could describe the relationship between Cummings and Debbie are apt to be Nebraska residents. Thus, we find that for the above-stated reasons, it is neither unfair nor unreasonable to hale Cummings into a Nebraska court.

2. DEFAULT JUDGMENT ON THE PETITION
The Department's petition seeking determination of paternity and support for the minor child alleges that the mother of the child and Cummings engaged in sexual intercourse, that as a result the mother became pregnant, and that the minor child was conceived in Nebraska. As a result of the pregnancy, the Department's petition alleges, Tammy was born and now resides with her mother in Sheridan County. Cummings alleges that the district court erred because it entered a judgment of paternity without corroborating evidence, and no evidence was received to establish paternity in the hearing on Cummings' default. It has long been the law that plaintiffs are entitled to a default judgment without offering evidence in support of the allegations of their petition, except allegations of value and amount of damage. Weir v. Woodruff, 107 Neb. 585, 186 N.W. 988 (1922). The Weir court stated that if it were true that to receive a default judgment the plaintiff must prove his or her cause of action,
"a failure to answer would operate as a general denial and a party answering would be in a worse plight than one in default...."
....
"Where a defendant is in default the allegations of the petition are to be taken as true against him, except allegations of value and amount of damage; and if the petition states a cause of action, the plaintiff is entitled to judgment without proof except as to the quantum of damages."
Id. at 586, 186 N.W. at 988. Cummings argues that under Neb.Rev.Stat. § 43-1412 (Reissue 1988), the uncorroborated testimony of the mother shall not alone be sufficient to support a verdict of paternity and that the district court was required to hear evidence in support of the facts alleged in the petition. We find that the petition states a cause of action, and Cummings, although given an opportunity to file an answer, failed to do so. Therefore, the allegations of the petition are to be taken as true against Cummings. The Department was entitled to judgment of paternity without further proof. The district *686 court properly held an evidentiary hearing regarding the amount of support owed by Cummings. Cummings has failed to supply this court with a bill of exceptions from the evidentiary hearing and has not assigned the amount of child support awarded as error. However, within the transcript, there is a completed worksheet which is in compliance with the Nebraska Child Support Guidelines. The worksheet indicates that the amount of child support awarded was calculated in compliance with the guidelines. We find the district court properly granted default judgment in the Department's favor.

V. CONCLUSION
We find that the Sheridan County District Court had personal jurisdiction over Cummings regarding his paternity of Tammy because there were sufficient minimum contacts and because it was neither unfair nor unreasonable to hale Cummings into a Nebraska court regarding a child he fathered in Nebraska. In addition, we find that the district court properly rendered default judgment against Cummings after he failed to answer and that further proof of the allegations regarding paternity in the Department's petition was not necessary. Finally, we find that the award of child support was not an abuse of discretion on the part of the district court.
AFFIRMED.