507 P.2d 468 (1973)
A. R. B., Petitioner,
v.
G. L. P., Respondent.
No. C-256.
Supreme Court of Colorado, En Banc.
February 13, 1973.
John Anderson, Canon City, for petitioner.
No appearance for respondent.
HODGES, Justice.
In a paternity proceeding commenced pursuant to 1967 Perm.Supp., C.R.S.1963, 22-6-1 et seq., the petitioner requested the trial court to declare the respondent to be the father of her child and to order support payments. An affidavit re military service filed by the petitioner set forth that when the petitioner was acquainted with the respondent, he was in the military service in Colorado, but that he later separated from military service and returned to "his home state of North Carolina and is employed there." Copies of the petition and summons were served on respondent in the state of North Carolina. He did not enter an appearance. The trial court made a determination on his own motion that it lacked jurisdiction over the respondent and therefore dismissed the petition. The petitioner appealed this dismissal.
We granted certiorari to review an affirmance of the trial court's disposition by our Court of Appeals in People In the Interest of D.R.B., 30 Colo.App. 603, 498 P.2d 1166. It was therein held that in a paternity action, our courts do not acquire jurisdiction over a non-resident respondent by virtue of personal service in the state of his residence pursuant to 1965 Perm.Supp., C.R.S.1963, 37-1-26(c) of our so-called long-arm statute. We are in agreement with this holding.
1965 Perm.Supp., C.R.S.1963, 37-1-26 provides in part:
"Jurisdiction of courts.(1)(a) Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person, and, if a natural person his personal representative, to the jurisdiction of the courts of this state, concerning any cause of action arising from:
......
(c) The commission of a tortious act within this state; . . . . " *469 1965 Perm.Supp., C.R.S.1963, 37-1-27 in part states that:
"(1) Service of process upon any person subject to the jurisdiction of the courts of Colorado may be made by personally serving the summons upon the defendant outside this state, in the manner prescribed by the Colorado rules of civil procedure, with the same force and effect as if the summons had been personally served within this state."
The primary issue for determination in a paternity case is whether the alleged father is, in fact, the father. In order to make our long-arm statute operative, it would have to be held that the act of siring a child is a "tortious act" committed in Colorado. We have considered the numerous definitions of a "tort" and "a tortious act" and none of them, by the application of the most liberal rules of construction, would tolerate the inclusion of an act of sexual intercourse between consenting adult parties, which, in the absence of allegations showing otherwise, is the nature of the act involved in this paternity case.
In Vandermee v. District Court, 164 Colo. 117, 433 P.2d 335 (1967), we discussed our long-arm statute in connection with an alleged act of negligence in the manufacturing of a crane. The defective crane, while being operated in Colorado, caused injury to a Colorado resident. We therein indicated that our long-arm statute should be liberally construed to accomplish its legislative purpose of expanding the jurisdiction of our courts within constitutional limitations in order to provide a local forum for Colorado residents who suffer damages in Colorado as the result of the tortious acts of non-residents. We do not agree with the petitioner's argument that Vandermee stands for the proposition that "tortious act" should be so liberally construed as to encompass within its meaning an act of the kind involved here.
Petitioner relies heavily upon Poindexter v. Willis, 87 Ill.App.2d 213, 231 N.E.2d 1 (1967) to support her contention that the trial court did acquire personal jurisdiction of the respondent. That case seems to go off on the premise that failure to support was a wrong which the legislature intended to include within the meaning of "tortious act." But failure to support is actually only an ancillary issue in a paternity case, where the main question for determination is: Is the respondent the father of the child? If a respondent is found to be the father, then it automatically follows that he has violated his responsibility for support. Therefore, we do not regard Poindexter as a suitable case upon which to rely for a resolution of the issue posed here.
There is a dearth of well-reasoned cases on the exact issue of this case. One case which we believe should be noted is Anonymous v. Anonymous, 49 Misc.2d 675, 268 N.Y.S.2d 710 (1966) which held in a situation similar to the instant case that the act of siring a child is not a tortious act.
Since the petition here did not allege a tortious act committed in Colorado, the trial court properly determined that it had no jurisdiction over the non-resident respondent by virtue of service of summons upon him under our long-arm statute.
Judgment affirmed.
PRINGLE, C. J., and KELLEY, J., dissent.
KELLEY, Justice (dissenting):
The majority opinion holding that the "long arm statute" does not apply turns solely upon the conclusion that rights arising under the paternity statutes (1967 Perm.Supp., C.R.S.1963, 22-6-1, et seq.) do not fall within the class described as "a tortious act" in subsection (c) of the long arm statute.
The court states that it has "considered the numerous definitions of a `tort' and `a tortious act' and none of them, by the application of the most liberal rules of construction, would tolerate the inclusion of an act of sexual intercourse between consenting adults, which, in the absence of allegations *470 showing otherwise, is the nature of the act involved in this paternity case."
First, I submit, it is not "the act of intercourse" which is involved, except indirectly. What is involved statutorily is "the paternity of a child and to compel support." (22-6-1) The action "may be commenced by the mother, ... by the child's guardian of the person, or, if the mother or the child is a public charge, by the county department of public welfare." (22-6-1)
Second, the late Professor Prosser, whose eminence in the field of tort law is generally recognized, says that:
"A really satisfactory definition of a tort has yet to be found. The numerous attempts which have been made to define the term have succeeded only in achieving language so broad that it includes other matters than torts, or else so narrow that it leaves out some torts themselves.. . . Broadly speaking, a tort is a civil wrong, other than breach of contract, for which the court will provide a remedy in the form of an action for damages. . . ." W. Prosser, Law of Torts 1, 2 (4th ed. 1971).
In the instant situation, the legislature has in effect said that the social policy of this state imposes upon the father of a child born out of wedlock financial responsibility for his care. In providing this responsibility, our state has provided for redress either by the mother or by the state itself if it has to assume the responsibility for the support of the child. In creating this liability, I am sure that it did not intend to deprive itself of the ability to attempt to obtain redress from a putative father who seeks to immunize himself by crossing the state line. On the contrary, it seems quite clear that the long arm statute reflects a conscious intent to assert jurisdiction over non-resident defendants to the extent permitted by the due process clause. Poindexter v. Willis, 87 Ill.App.2d 213, 231 N.E.2d 1 (1967); Poindexter v. Willis, 23 Ohio Misc. 199, 256 N.E.2d 254 (1970).
Continuing his analysis of a tort, Professor Prosser suggested:
"It might be possible to define a tort by enumerating the things that it is not. It is not crime, it is not breach of contract, it is not necessarily concerned with property rights or problems of government, but is the occupant of a large residuary field remaining if these are taken out of the law. . . ."
He also noted that:
" . . . There is no necessity whatever that a tort must have a name. New and nameless torts are being recognized constantly, and the progress of the common law is marked by many cases of first impression, in which the court has struck out boldly to create a new cause of action, where none had been recognized before. . ." W. Prosser, supra, at 2, 3.
Passing from the text in reference to a definition, Professor Prosser analyzes the characteristics of a tort. This pertinent statement is particularly apropos here:
" . . . it has been said that torts consist of the breach of duties fixed and imposed upon the parties by the law itself, without regard to their consent to assume them, or their efforts to evade them. . . ." W. Prosser, supra, at 4.
And finally, these applicable statements from the Prosser text:
". . . Liability in tort is based upon the relations of men with another; and those relations may arise generally, with large groups or classes of persons, or singly, with an individual."
.......
"The law of torts, then, is concerned with the allocation of losses arising out of human activities; and since these cover a wide scope, so does this branch of the law....
". . . The common thread woven into all torts is the idea of unreasonable interference with the interests of others.

*471 ... The tort-feasor usually is held liable because he has acted with an unreasonable intention, or because he has departed from a reasonable standard of care. . . ." W. Prosser, supra, at 5, 6.
It appears to me that by the enactment of 1965 Perm.Supp., C.R.S.1963, 37-1-26, the General Assembly intended to include in the coverage of the Act, consistent with due process, all types of transactions except those which are criminal.
I am authorized to say that Mr. Chief Justice PRINGLE joins in this dissent.