[No. A040799. First Dist., Div. Four. Dec. 19, 1988.]

COUNTY OF HUMBOLDT, Plaintiff and Appellant, v. CLIFFORD LEE HARRIS, Defendant and Respondent.

COUNSEL

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Laurence K. Sullivan and Josanna Berkow, Deputy Attorneys General, for Plaintiff and Appellant.

Judith L. Edson for Defendant and Respondent.

OPINION

ANDERSON, P. J.—The County of Humboldt (the county) appeals the trial court order granting a motion to quash service of summons in a paternity action brought against a Nevada resident. The procedural and factual background leading to the appeal may be summarized as follows:

Plaintiff county brought an action on behalf of Brianna H. (Brianna), a minor child, to establish paternity and set child support and to seek reimbursement of Aid to Families with Dependent Children (AFDC) funds expended by the county for the support of Brianna. Defendant Clifford Lee Harris (respondent), the alleged father of the minor, made a special appearance by moving to quash the service of summons on the grounds of lack of personal jurisdiction and inconvenient forum.

The matter was decided based upon supporting and opposing affidavits and the testimony of Deborah Syrdal (Deborah), the mother of the child. In her affidavit Deborah stated that Brianna was born in California on July 7, 1985. The child was conceived in October 1984 when Deborah and respondent had sexual intercourse in Deborah's house in King's Beach, California, and in Oakland. Deborah further alleged that respondent owned or owns a home in Costa Mesa, California; that he lived in Culver City, California; and that he owned a business in Los Angeles, California. At the hearing on the motion, Deborah testified that during the possible period of conception, she had sexual relations only with respondent. She further maintained that respondent had told her he was a partner in a security guard business in Los Angeles and that after breaking off with her, respondent moved to Culver City to live with his new girlfriend there. Respondent set out in his affidavits that he was a resident of Nevada attending the University of Nevada, in Reno, and that since 1982 he had virtually no contact with California (i.e., owned or managed no business in California; owned no property in Costa Mesa; and never lived in Culver City). He admitted sexual intercourse in California. The trial court granted the motion in ruling, reading as follows:

"The evidence shows that the defendant had at least one act of sexual intercourse in California. He made some statements to the mother of the child which led her to believe that he was a resident of California. [¶] Beyond her beliefs we now have Mr. Harris' declaration denying that he is, or was, a resident of this State. [¶] The suit should be commenced in Nevada. Motion to quash is granted."

■ The county contends that this ruling was erroneous inasmuch as the conception, birth and rearing of the minor in California constituted sufficient grounds to maintain personal jurisdiction over the nonresident respondent pursuant to specific statutory authority (Civ. Code,[1] § 7007) and general due process principles. We agree with the county and reverse.

■ Under the long-arm statute, Code of Civil Procedure section 410.10, a California court may exercise jurisdiction over a nonresident defendant on any basis not inconsistent with the United States or California Constitutions. Case authority teaches us that this section manifests an intent to exercise the broadest possible jurisdiction limited only by constitutional considerations. (*Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 445 [128 Cal.Rptr. 34, 546 P.2d 322].) As a general constitutional principle, a court may exercise personal jurisdiction over a nonresident individual so long as he has such minimum contacts with the state that the maintenance of the suit does not offend the " 'traditional notions of fair play and substantial justice.' " (*Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 102, 66 S.Ct. 154, 161 A.L.R. 1057]; *Secrest Machine Corp.* v. *Superior Court* (1983) 33 Cal.3d 664, 668 [190 Cal.Rptr. 175, 660 P.2d 399].)

■ The requirement of minimum contacts is satisfied not only by doing business or owning property in the forum state, but also by doing an act provided (1) the cause of action alleged arises from the act done in the state; and (2) in light of the circumstances the exercise of the jurisdiction is reasonable. (Rest.2d Conflict of Laws, § 36, subd. (2); *Hanson* v. *Denckla* (1958) 357 U.S. 235, 253 [2 L.Ed.2d 1283, 1297-1298, 78 S.Ct. 1228]; *Rice Growers Assn.* v. *First National Bank* (1985) 167 Cal.App.3d 559, 567 [214 Cal.Rptr. 468].) In determining reasonableness a number of factors are to be considered: the nature and quality of the act, the extent of the relationship of the state to the defendant and the plaintiff, and the degree of inconvenience to the defendant if forced to defend in the state; it is also settled that the state's jurisdiction is likely to be upheld when it is based upon a particular statute or regulation and/or when the isolated act has injurious consequences in the state. As stated in the Restatement Second of Conflict

---

[1] Unless otherwise indicated, all further statutory references are to the Civil Code.

of Laws section 36, comment e: "it is reasonable that a state should exercise judicial jurisdiction over the defendant as to causes of action arising from an act done, or caused to be done, by him in the state which the state subjects to special regulation" or when the act done by him has "substantial consequences there even though the act is an isolated act not constituting the doing of business in the state." (At p. 150; see also *McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220, 224 [2 L.Ed.2d 223, 226-227, 78 S.Ct. 199].)

The case at bench falls squarely within the above stated premises. Section 7007, which is a part of the Uniform Parentage Act codified in California (§ 7000 et seq.), provides that "A person who has sexual intercourse in this state thereby submits to the jurisdiction of the courts of this state as to an action brought under this part with respect to a child who may have been conceived by that act of intercourse." (Subd. (b).) Moreover, it is obvious that the sexual act resulting in the birth of a child imposes a substantial burden both upon the mother and where, as here, the mother is impecunious, upon the state. As succinctly stated in *State* ex rel. *Nelson* v. *Nelson* (1974) 298 Minn. 438 [216 N.W.2d 140], an analogous case, where the nonresident putative father was subjected to the jurisdiction of the forum: "By failing to perform his statutory duties of support, defendant has caused foreseeable damages to complainant. Contrary to defendant's contention, complainant mother has indeed suffered injury, for, quite apart from the physical and emotional trauma of bearing the child and rearing it alone, she is faced with the financial burdens of medical and hospital bills. She is also confronted with the expense of rearing their child and possible impairment of her earning power." (216 N.W.2d at p. 143.)

The proposition that a jurisdictional statute similar to the one enacted in California satisfies the due process requirement and lawfully subjects the nonresident putative father to the jurisdiction of the state where the child was conceived and born, is well supported by sister state case authority.

For example, in *Larsen* v. *Scholl* (Iowa 1980) 296 N.W.2d 785, plaintiff, the mother of an illegitimate child, brought a paternity and support action in Iowa against the putative father, a Nebraska resident. Defendant specially appeared and contested the court's jurisdiction for lack of sufficient minimum contacts. The trial court agreed with defendant and dismissed the action. The Iowa Supreme Court reversed by holding that the instances of sexual intercourse occurring in Iowa, the birth of the child as a result thereof, and its financial support by Iowa public assistance constituted the requisite minimum contacts to subject defendant to Iowa jurisdiction. The court emphasized that the siring of the child in Iowa, the state's obvious interest in establishing the paternity of an illegitimate child, the parents'

obligation to support the minor and the right of the social welfare department to seek reimbursement from the parents for public assistance made it fair and reasonable to require the nonresident defendant to respond to the Iowa litigation. (*Larsen* v. *Scholl, supra,* 296 N.W.2d at p. 790.)

In *Gentry* v. *Davis* (Tenn. 1974) 512 S.W.2d 4, the child was conceived in the forum state and the paternity action was brought against the nonresident putative father pursuant to the Tennessee long-arm statute (Tenn. Code Ann. § 20-236). As in *Larsen,* the trial court dismissed the action against the defendant for lack of personal jurisdiction. The Tennessee Supreme Court reversed the order by finding the defendant's acts in the forum sufficient to support in personam jurisdiction: "We hold that the allegation in appellant's complaint, that appellee committed an act in Tennessee which would render him liable for the support of their offspring, is sufficient to confer upon Tennessee courts personal jurisdiction of the appellee, and that the method of service of process provided by T.C.A. § 20-236 is proper in this case. [¶] We find nothing in the application of the long-arm jurisdictional statute and substituted service of process statute offending those fundamental notions of fairness to the defendant which defined the limitations of long-arm jurisdiction. See International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)." (*Gentry* v. *Davis, supra,* at p. 6.)

Although in a different procedural context, the issue whether the conception and birth of a child in California constitute sufficient contacts to invoke personal jurisdiction over a nonresident defendant under section 7007 and Code of Civil Procedure section 410.10, was raised and decided in *County of Ventura, State of Cal.* v. *Neice* (Ind.App. 1982) 434 N.E.2d 907. In *Neice,* the father of the illegitimate child, Tony Mirano Neice (Tony), had sexual intercourse with Diana, the mother of the child, in California. Following the birth of the child, a paternity and support action was brought against Tony in California. Tony failed to appear in the California court proceedings, and a default judgment was entered against him. Since Tony refused to comply with the support order, Ventura County filed a petition for reimbursement of welfare funds expended and for continuing support under the Uniform Reciprocal Enforcement of Support Act (URESA). (Code Civ. Proc., § 1650 et seq.) The prosecutor in Indiana sought to enforce the California order in the Hancock Circuit Court in Indiana. Tony contended that the California order was unenforceable under the full faith and credit clause of the United States Constitution because, among other reasons, the California court failed to obtain personal jurisdiction over him in accordance with the mandate of due process. The Indiana Court of Appeals rejected Tony's contention and upheld section 7007 and Code of Civil Procedure section 410.10. It concluded that the twin requirements of mini-

mum contact and adequate notice dictated by due process were met: "The conduct ascribed to [Tony] has resulted in the birth of a child who is a citizen of California and has only one parent to care for him. To base jurisdiction on this degree of contact with a sister state does not 'offend "traditional notions of fair play and substantial justice."' *International Shoe, supra* 326 U.S. at 316, 66 S.Ct. at 158, and the minimum contact requirement of due process is satisfied." (434 N.E.2d at p. 912; see also *Neill* v. *Ridner* (1972) 153 Ind.App. 149 [286 N.E.2d 427]; *Poindexter* v. *Willis* (1970) 23 Ohio Misc. 199 [51 Ohio Ops.2d 157, 256 N.E.2d 254]; *Bebeau* v. *Berger* (1975) 22 Ariz.App. 522 [529 P.2d 234].)

In *Lake* v. *Butcher* (1984) 37 Wn.App. 228 [679 P.2d 409], a case factually similar to that at bench, the child was born as a result of sexual intercourse in Washington between the mother, a Washington resident, and the father, an out-of-state defendant. The mother brought a paternity and support action against the putative father in Washington predicated upon a state statute almost identical to section 7007 (Wash. Rev. Code § 26.26.080(2)).[2] The father contended that the statute incorporating section 8 of the Uniform Parentage Act was unconstitutional because it granted personal jurisdiction over him based solely upon an act of sexual intercourse performed within the state. The reviewing court rejected the argument by concluding that "it does not offend traditional notions of fair play or substantial justice to hold that a man who fathers a child in this state has established sufficient contacts with the state to support the assertion of personal jurisdiction over him in an action concerning that child." (*Id.,* at p. 412.)

We observe that *Kulko* v. *California Superior Court* (1978) 436 U.S. 84 [56 L.Ed.2d 132, 98 S.Ct. 1690], the primary authority relied upon by respondent (and apparently the trial court), is clearly distinguishable from the case at bench. In *Kulko,* the spouses' contact with California was sparse and insignificant. Although "the stop-over marriage" was entered between the parties while travelling through California and Sharon (plaintiff), and later the children, moved to this state, the substantial and enduring contacts of the parties were with New York. Both spouses were longtime New York residents; their children were born in New York; and the separation agreement determining the custody and support of the minor children was negotiated and concluded in New York. By contrast herein, Deborah (the child's

---

[2] Washington Revised Code section 26.26.080(2) provides: "A person who has sexual intercourse in this state thereby submits to the jurisdiction of the courts of this state as to an action brought under this chapter with respect to a child who may have been conceived by that act of intercourse. In addition to any other method provided by statute, personal jurisdiction may be acquired by personal service of summons outside this state or by service in accordance with RCW 4.28.185 as now or hereafter amended." (At p. 411.)

mother) was a permanent California resident, and Brianna (the minor) was conceived, born and reared in California. Furthermore, in *Kulko,* the plaintiff brought the California action against her New York ex-husband for child support only, and the jurisdictional foundation of the action rested on the theory that defendant, an out-of-state resident, caused effects in California by doing an act or omission outside the state, i.e., by giving help or acquiescing in their children's leaving New York and settling down in California—activities which the United States Supreme Court held insufficient to support personal jurisdiction over the New York father. Contrariwise, in the case at bench the county brought the action against the nonresident putative father, both to establish paternity and to set support based upon an act committed by the father in California which caused direct consequences in California—a burden upon both the natural California mother and the California welfare system. Finally, *Kulko* was decided upon general constitutional principles, without benefit of a specific jurisdictional statute. In denying personal jurisdiction over the nonresident father, the court emphasized that "California has not attempted to assert any particularized interest in trying such cases in its courts by, *e.g.,* enacting a special jurisdictional statute." (At p. 98 [56 L.Ed.2d at p. 145], original italics.) Such is not the case herein, where state legislation explicitly provides that a person who conceives a child in California submits himself to the jurisdiction of the state concerning any action "brought under this part" of the code (§ 7007); the cited section refers to the Uniform Parentage Act (§§ 7000 through 7021) which embraces both paternity and support actions (§ 7006, 7010).

We also reject respondent's alternative argument that the order to quash should be sustained on the ground of forum non conveniens. We note that although respondent moved to quash the service of summons for both lack of jurisdiction and inconvenient forum, the parties addressed only the issue of personal jurisdiction. It follows that the court order granting the motion to quash was predicated solely on that ground. ██ Furthermore, the determination of the convenient forum is a factual one (*Great Northern Ry. Co.* v. *Superior Court* (1970) 12 Cal.App.3d 105, 112-115 [90 Cal.Rptr. 461]); these necessary facts were neither presented, nor argued below; we are powerless to decide the issue here.[3]

---

[3] We also note that the doctrine of forum non conveniens has only an extremely limited application to a case where, as here, the plaintiff is a bona fide resident of the forum state. (*Thompson* v. *Continental Ins. Co.* (1967) 66 Cal.2d 738, 742 [59 Cal.Rptr. 101, 427 P.2d 765].)

The order is reversed. Respondent is to bear costs on appeal.

Channell, J., and Perley, J., concurred.