592 So.2d 966 (1991)
Carl Anthony JONES
v.
Desmond CHANDLER, by Velma Hodges, as Mother and Next Friend.
No. 90-CA-0555.
Supreme Court of Mississippi.
December 18, 1991.
*968 Lucius Edwards, Hernando, for appellant.
Carter Dobbs, Jr., Amory, for appellee.
En Banc.
ROBERTSON, Justice, for the Court:

I.
We consider today the plea of a non-resident defendant, who resided (temporarily) in this state and engaged in a course of conduct with a citizen of this state wholly within the territorial boundaries of this state, such that the non-resident was once wholly amenable to suit on a claim arising out of the course of conduct. The non-resident thereafter left Mississippi but from without visited upon citizens of this state substantial, adverse and actionable effects factually and causally the outgrowth of his earlier conduct here.
The question is whether our law makes such a person amenable to suit in Mississippi. We answer "Yes" and affirm the judgment below.

II.
Velma Hodges is an adult resident citizen of the State of Mississippi and has lived in Monroe County virtually all of her life. During the 1977-78 school year, Hodges was a student at Jackson State University in Jackson, Mississippi, where she met Carl Anthony Jones, also a student at Jackson State. The two dated for some seven to eight months and during this time, we are *969 told, begat young Desmond Chandler, born on October 25, 1978. Jones has denied paternity and, as well, has refused to support Desmond.
On March 14, 1989, Desmond Chandler, by and through his mother and next friend, Velma Hodges, filed in the Chancery Court of Monroe County a complaint alleging that Carl Anthony Jones was his father and demanding support and maintenance according to law. The clerk of that court issued process and a deputy sheriff of Shelby County, Tennessee, personally served that process on Jones in Memphis. Jones answered, denying, inter alia, that he was amenable to personal jurisdiction in Mississippi in this case.
The Chancery Court held an evidentiary hearing on Jones' jurisdictional challenge. Jones called Hodges adversely and elicited from her the essentials of the relationship between the two, including the fact that the two had sexual relations but were never married and never lived together as husband and wife. The Chancery Court denied Jones' jurisdictional challenge.
Matters proceeded apace, and in due course on April 24, 1990, the Chancery Court found as a fact:
That the plaintiff, Desmond Chandler, the child of Velma Hodges, was born on October 25, 1978, and that the defendant, Carl Anthony Jones, is the father of said child.
The Court then ordered Jones to provide for the support and maintenance of the minor child and to pay additional sums as provided by law for attorney fees, costs, and the like. See Mississippi Uniform Law on Paternity, Miss. Code Ann. §§ 93-9-1, et seq. (1972 and Supp. 1991).
Jones appeals and presents no question regarding the merits of the case. He argues only that the Chancery Court had no personal jurisdiction over him.

III.
There is a preliminary question. Chandler argues Jones waived his jurisdictional challenge. Chandler predicates this claim on the fact that Jones filed an answer which did not specifically challenge personal jurisdiction as an affirmative defense, arguing that the answer constituted a general appearance, precluding Jones' later assertion of his jurisdictional claim.
The matter is now controlled by the Mississippi Rules of Civil Procedure.[1] The matter is governed by Rule 12, Miss.R.Civ. P., which in pertinent part reads:
(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:

(1) Lack of jurisdiction over the subject matter,
(2) Lack of jurisdiction over the person, ...
No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion... . (emphasis added)
Rule 12(h)(1), Miss.R.Civ.P., completes the picture.
(h) Waiver or Preservation of Certain Defenses
(1) A defense of lack of jurisdiction over the person, ..., is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by a motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.
Applying these rules, we find, first, that in his answer Jones charged
that the court lacks jurisdiction over the defendant in this cause.
The fact that he did not label this "Affirmative Defense" is of no moment. Jones followed up with a motion to dismiss for lack of personal jurisdiction, see Rule *970 12(b)(2), Miss.R.Civ.P. This is hardly the stuff of which waivers are made.
Most assuredly, objections to personal jurisdiction must be asserted timely or they will be held waived. Young v. Huron Smith Oil Co., Inc., 564 So.2d 36, 39 (Miss. 1990); Brown v. Brown, 493 So.2d 961, 963 (Miss. 1986). On the other hand, we have come a long way from the days when we once held that a non-resident defendant could unwittingly waive his jurisdictional defense by merely breathing in the direction of the courthouse. See O'Neill v. O'Neill, 515 So.2d 1208 (Miss. 1987); Mladinich v. Kohn, 250 Miss. 138, 149-57, 164 So.2d 785, 790-94 (1964).
The Chancery Court correctly held Jones had presented his jurisdictional defense in a procedurally proper and timely manner.

IV.

A.
There is no question Jones was amenable to a paternity and support suit here so long as he remained in Mississippi. Jones says in effect that his subsequent (re)flight across the state line to Memphis changes all of this. The point arises under the law of this state. No one suggests Jones enjoys any federal constitutional shield from suit here. See International Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945) and progeny, particularly Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).
Had Jones and Hodges been married when they performed their begatting act, all other facts being the same, Jones would have been amenable to suit for support in Mississippi. Miss. Code Ann. § 93-11-67(1) (Supp. 1990). Had just one of them been married (to someone else) and had they performed in Mississippi the begatting act, albeit fruitlessly, Jones would have been amenable to suit here.[2]Camp v. Roberts, 462 So.2d 726, 727 (Miss. 1985), construing Miss. Code Ann. § 13-3-57 (Supp. 1990) (non-resident defendant committing criminal conversation here may be sued here). On today's facts, Carl Anthony Jones is on principle amenable to suit here as a matter of this state's positive law.
The Chancery Court held Jones amenable to Rule 4, Miss.R.Civ.P. Jones charges this was error, and we agree. Rule 4 provides a procedure for serving process upon those amenable to suit here by reference to other law, but, in his survey of "other law," Jones mistakenly assumes our hands are tied because he says we may find no statute expressly making him amenable to the suit in Mississippi.
In the first place, we see no reason why this case does not lie within Section 13-3-57.[3] Begatting a child suggests the father has assumed a quasi-contractual obligation to support the child, the statute requiring only a contract "to be performed in whole or in part by any party in this state." Begatting a child and refusing to *971 support it sounds in tort, in the sense that we think a tort a "civil wrong." Section 13-3-57's catchall  "do any business or perform any character of work or service in this state"  is so broad that it belies any suggestion it be limited to commercial activity.
The states' legal long arms commonly take statutory form, but this does not have to be. It is a fact of history that state courts once took an unfortunately restrictive view of their powers over non-residents. See Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877). Recognizing that the interests of their citizens required more, the legislatures of the several states stepped forward and provided what are popularly known as long-arm statutes, but there is no reason on principle or power why the courts could not have done the same thing.[4] There is no reason why the existence of these long-arm statutes should be taken to preclude the courts' common law lawmaking powers absent, of course, legislative expression to the contrary. To suggest that long-arm amenability rules may be only statutory in form and legislative in source is to confuse the familiar with the necessary and thus fall into fallacy.
We have accepted this view in an analogous context. Where persons are married to each other and live in Mississippi, both are amenable here to suit for divorce, alimony, support and the like, notwithstanding one moves across the state line. Chenier v. Chenier, 573 So.2d 699 (Miss. 1990), recognizes this view, cites our prior cases to that effect, and specifically accepts that the legal rule rendering the non-resident amenable to suit here is non-legislative in source and non-statutory in form. Chenier, 573 So.2d at 702. We find power in the public policy expression in the last paragraph of our general long-arm statute, Miss. Code Ann. § 13-3-57, which covers:
any person who is a nonresident at the time any action or proceeding is commenced against him even though said person was a resident at the time any action or proceeding accrued against him.
Viewing our law as an organic whole, see J.L. Teel Company, Inc. v. Houston United Sales, Inc., 491 So.2d 851, 857 (Miss. 1986); Grisham v. Hinton, 490 So.2d 1201, 1209 (Miss. 1986) (Robertson, J., concurring), we find the unmistakable principle, long existing and deeply embedded, that (both resident and non-resident) persons who, by their conduct in, or effects upon, this state, acquire otherwise enforceable duties toward this state's citizens, upon whom the law confers correlative and corresponding rights, may be haled into our courts and, consistent with due process, required to answer for their defaults.

IV.

B.
Two points need be made clear. Mississippi law makes a non-resident's amenability to suit in our courts turn on his activity in this state, Administrators of the Tulane Educational Fund v. Cooley, 462 So.2d 696, 701 (Miss. 1984), and the effects he causes here, Smith v. Temco, Inc., 252 So.2d 212, 214, 216 (Miss. 1971). It is not necessary that we label that activity or those effects as tortious, or even inquire whether they be so, as the personal jurisdiction inquiry proceeds wholly apart from any thought of the (de)merits of the plaintiff's claim. Petters v. Petters, 560 So.2d 722, 723-24, 727 (Miss. 1990). By the same token, the fact that the begatting act occurred some eleven years prior to this suit is of no concern. The existence vel non of a laches or limitations defense again is a matter separate and distinct from amenability to personal jurisdiction, and any contrary intimations in Rothschild v. Hermann, 542 So.2d 264, 265 (Miss. 1989), may be safely branded error.
That the non-resident may have a defense on the merits may not serve to *972 defeat in personam jurisdiction, which turns initially on the well-pleaded allegations of the complaint. Petters v. Petters, 560 So.2d 722, 727 (Miss. 1990); Mandel v. James Graham Brown Foundation, Inc., 375 So.2d 1017, 1019 (Miss. 1979). This view has no less force where, as here, the factual charges supporting amenability to suit are integrally intertwined with the merits of plaintiff's case.[5]

C.
More than a few states acting in today's context have found in their state's (similar) law bases for personal jurisdiction over non-resident putative fathers, see, e.g., Poindexter v. Willis, 87 Ill. App.2d 213, 217-18, 231 N.E.2d 1, 3 (1967); Neill v. Ridner, 153 Ind. App. 149, 286 N.E.2d 427, 429 (1972); Black v. Rasile, 113 Mich. App. 601, 318 N.W.2d 475 (1980); State Ex Rel. Nelson v. Nelson, 298 Minn. 438, 216 N.W.2d 140 (1974); Poindexter v. Willis, 23 Ohio Misc. 199, 256 N.E.2d 254, 257-60 (1970); Gentry v. Davis, 512 S.W.2d 4, 6 (Tenn. 1974); In Re Custody of Miller, 86 Wash.2d 712, 548 P.2d 542, 546-549 (1976), although it must be conceded the view has its dissenters. These cases proceed on a variety of theories. Illinois, for example, considering a long arm statute not unlike our Section 13-3-57, provides a valuable insight:
... [T]he word "tortious" ... is not restricted to the technical definition of a tort, but includes any act committed in this state which involves a breach of duty to another and makes the one committing the act liable to the respondent in damages.
Poindexter, 87 Ill. App.2d at 217, 231 N.E.2d at 3.
Jones cites several cases from other states which call into question the proposition that the putative father's failure and refusal to support a child in the forum state becomes a "tortious" act subjecting him to suit there. We agree this view is (somewhat) misfocused. See A.R.B. v. G.L.P., 180 Colo. 439, 442, 507 P.2d 468, 469 (1973). Both the begatting act and the subsequent neglecting act with Mississippi effects render the putative father subject to suit here. Neglect without more would run afoul such cases as Kulko v. Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); and Carpenter v. Allen, 540 So.2d 1334 (Miss. 1989). More to the point, the support action is no more ancillary to the paternity suit than the child is to the begatting act.

V.
These things said, we find the interests of this state and its people adequate that we ought hold persons such as Carl Anthony Jones amenable to suit here. We find the statutory and common law sources adequate that we may, in a paternity and support action, declare this state's law to hold amenable to suit here a non-resident who, in this state, together with a resident of this state, begets a child that thereafter resides here without support from his putative father. Applying this rule, we take the complaint as true, augmented by the proof below, and hold that, by reason of his presence in Mississippi as a student at Jackson State University, his activities and relationship with a citizen of this state, and his subsequent failure to support the child he begat here and who still lives here, Carl Anthony Jones is wholly amenable to suit in this state.
AFFIRMED.
PRATHER, PITTMAN and BANKS, JJ., concur.
*973 McRAE, J., concurs with separate specially concurring opinion, joined by DAN M. LEE, P.J.
ROY NOBLE LEE, C.J., dissents with separate written opinion, joined by HAWKINS, P.J., and SULLIVAN, J.
McRAE, Justice, specially concurring:
I agree with the majority's result in reaching the conclusion that the defendant Jones was amenable to in personam jurisdiction of this state, namely because Jones, in his begetting act went too far, i.e., he negligently impregnated the plaintiff, thereby subjecting himself to the Long-Arm Statute.
I do not agree with the majority's statement that the father had assumed a quasi-contractual obligation to support the child, or that the begetting of a child and refusing to support it sounds in tort, particularly when the record does not show that he refused to support the child. He simply contended that he was not the father and lost.
While I agree with the majority that Miss. Code Ann. § 13-3-57 (Supp. 1990), a catchall for any business done or business service performed in this state, is broad and is not limited to commercial activities, defendant's performance cannot be considered in this vein. It appears that the defendant's act toward the plaintiff was more of a "disservice" than a "service." Section 13-3-57 is therefore inapplicable.
DAN M. LEE, P.J., joins this opinion.
ROY NOBLE LEE, Chief Justice, dissenting:
I do not agree with the majority that the lower court had personal jurisdiction over Jones, and I dissent therefrom.
Desmond Chandler, a minor resident citizen of Monroe County, Mississippi, by and through his mother and next friend, Velma Hodges, an adult resident citizen of Monroe County, Mississippi, filed a complaint alleging that Carl Anthony Jones, an adult resident citizen of Memphis, Shelby County, Tennessee, was his father. The complaint also requested that Jones pay child support and maintain a medical insurance policy for Desmond's benefit.
Process was served on Jones in Memphis, Tennessee, by a deputy sheriff of Shelby County. Jones answered the complaint and alleged that the Monroe County Chancery Court did not have jurisdiction over him. After filing his answer, he filed a Motion to Dismiss the Complaint for Lack of Personal Jurisdiction.
A hearing was held on the motion to dismiss. Velma Hodges testified that she met Jones while they were attending school at Jackson State University. They started dating in 1977, and the relationship lasted approximately 7 to 8 months. During their relationship, Hodges and Jones had sexual relations. They were never married, and never lived together as husband and wife. Hodges testified that she never went outside the State of Mississippi with Jones, and that she had lived in Mississippi virtually all of her life. Desmond Chandler was born on October 25, 1978. At the close of the hearing, the lower court denied the motion to dismiss.
Chandler filed a Motion for Blood Tests. The motion was sustained and Jones was ordered to submit to a blood test. If he failed to do so, it was ordered that the question of paternity would be resolved against him. Jones did not submit to the test, and a default judgment was entered. Hence this appeal.

DISCUSSION

A. Waiver of jurisdiction.

Chandler filed his complaint on March 14, 1989. Jones was served in Memphis on March 20, 1989, and he filed an answer to the complaint on May 24, 1989. On July 24, 1989, Jones filed his Motion to Dismiss the Complaint for Lack of Personal Jurisdiction Over the Defendant.
Chandler contends that Jones waived any claim of lack of personal jurisdiction. Jones stated in his answer that the court lacked jurisdiction, but Chandler argues that Jones failed to plead the matter as an affirmative defense as required by M.R.C.P. 8(c). Chandler further contends *974 that Jones should have raised the defense prior to filing his answer; that the filing of the answer constituted a general appearance; and that, as a result, Jones waived his claim. M.R.C.P. 12.
In Arrow Food Distributors, Inc. v. Love, 361 So.2d 324 (Miss. 1978), this Court held that "[b]y entering a general appearance, Arrow waived any asserted defect in the jurisdiction." Id. at 327. In McMillan v. Tate, 260 So.2d 832 (Miss. 1972), the defendant filed a Motion for a Bill of Particulars and a Motion for Time to Plead or Answer. On the next day, he filed an answer and a Motion to Dismiss for Lack of Jurisdiction. The lower court overruled the motion to dismiss. This Court affirmed and held:
[T]he trial court was correct in overruling the motion to dismiss for want of jurisdiction for the reason that appellant entered his appearance and submitted himself to the jurisdiction of the court by filing a motion for a bill of particulars, a motion for time to plead, and an answer before raising the question relative to the jurisdiction of the court. While an individual or corporation may appear specially for the purpose of objecting to the jurisdiction of the court over his person, he must do so before filing any other pleadings. Mladinich v. Kohn, 250 Miss. 138, 164 So.2d 785 (1964).
Id. at 833.
Both Arrow and McMillan, however, were decided prior to the adoption of the Mississippi Rules of Civil Procedure. Jones was not required to file a motion claiming lack of personal jurisdiction before he filed his answer. According to M.R.C.P. 12(b), a pre-answer motion was not required, if Jones followed the requirements of M.R.C.P. 12(g) and 12(h)(1). M.R.C.P. 12(b) reads in pertinent part as follows:
(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:

(1) Lack of jurisdiction over the subject matter,
(2) Lack of jurisdiction over the person, ...
No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion... . (emphasis added)
The first issue addressed in Jones' answer was the lack of jurisdiction. Thus, Jones did not waive the defense by failing to include it in his responsive pleading. M.R.C.P. 12(h)(1)(B). The lower court did not err in determining that Jones sufficiently raised the issue in his pleadings.

B. Long-Arm Statute.

Jones contends that there is no statutory authority which would allow the lower court to exercise personal jurisdiction over him. In order to exercise personal jurisdiction over a nonresident, there must be a statute authorizing such jurisdiction and sufficient contacts between the defendant and the forum state to satisfy "traditional notions of fair play and substantial justice." Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283 (1940). See also International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877).
Mississippi's Uniform Law on Paternity, Miss. Code Ann. §§ 93-9-1 to -49 (1972), is silent as to the question of personal jurisdiction over nonresident defendants. The language contained in Miss. Code Ann. § 93-9-17, however, clearly indicates that actions against nonresident defendants were contemplated. Miss. Code Ann. § 93-9-17 reads as follows:
Venue.
An action under sections 93-9-1 to 93-9-49 may be brought in the county where the alleged father is present or has property; or in the county where the mother resides; or in the county where the child resides. However, if the father resides or is domiciled in this state, the action *975 must be brought in the county where the father resides. (emphasis added)
Since there is no statute conferring personal jurisdiction over nonresident defendants in paternity actions, Jones contends that the only way a Mississippi court can exercise jurisdiction over him is through the statute conferring personal jurisdiction over nonresident defendants in child support cases. Miss. Code Ann. § 93-11-67 (Supp. 1990) provides:
Personal jurisdiction over nonresident defendants.
(1) In an action for child support, a court may exercise personal jurisdiction over and enter a judgment in personam against a defendant if personal service of process is made as provided below and if the parties had resided in a marital relationship with each other in this state for thirty (30) days and if the complainant has continuously resided in this state after the defendant has become a nonresident.
Section 93-11-67 does not control in this case because Hodges and Jones were never married, and never lived together as husband and wife in this State.
Chandler contends that Miss. Code Ann. § 13-3-57 (Supp. 1990), the Long-Arm Statute, gives Mississippi courts the authority to exercise personal jurisdiction over Jones. Miss. Code Ann. § 13-3-57 in pertinent part reads as follows:
Service when defendant is nonresident doing business in state; appointment of secretary of state as agent.
Any nonresident person ... who shall commit a tort in whole or in part in this state against a resident or nonresident of this state ... shall by such act or acts be deemed to be doing business in Mississippi.
Chandler claims that Jones has committed a tortious act in this State by failing to support his child. According to Miss. Code Ann. § 93-9-7 (1972), Jones has a duty to support his child even though it is born out of wedlock. Miss. Code Ann. § 93-9-7 reads as follows:
Obligations of the father  definition.
The father of a child which is or may be born out of lawful matrimony is liable to the same extent as the father of a child born of lawful matrimony, whether or not the child is born alive, for the reasonable expense of the mother's pregnancy and confinement, and for the education, necessary support and maintenance, and medical and funeral expenses of the child. A child born out of lawful matrimony also includes a child born to a married woman by a man other than her lawful husband.
Chandler contends that Jones' breach of the duty imposed by Miss. Code Ann. § 93-9-7 meets the definition of a tortious act, and thus, the chancery court could exercise personal jurisdiction over Jones through the long-arm statute. In Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957), the Supreme Court of Illinois held:
The foundations of jurisdiction include the interest that a State has in providing redress in its own courts against persons who inflict injuries upon, or otherwise incur obligations to, those within the ambit of the State's legitimate protective policy.
Id. 143 N.E.2d at 676.
Although this is a case of first impression in the State, other jurisdictions have dealt with this problem. See Annotation, Long-Arm Statutes: Obtaining Jurisdiction Over Nonresident Parent in Filiation or Support Proceeding, 76 A.L.R.3d 708 (1977). Several states have adopted the reasoning proposed by Chandler. See Black v. Rasile, 113 Mich. App. 601, 318 N.W.2d 475 (1980); State ex rel. Nelson v. Nelson, 298 Minn. 438, 216 N.W.2d 140 (1974); Poindexter v. Willis, 87 Ill. App.2d 213, 231 N.E.2d 1 (1967). See also Neill v. Ridner, 153 Ind. App. 149, 286 N.E.2d 427, 429 (1972) ("no requirement that the act complained of be a tort as it was known at the common law").
In Poindexter, the plaintiff, a resident of Illinois, filed a complaint against the alleged father, a resident of Ohio. She alleged that the defendant seduced her on several occasions in Illinois. Personal service was had on the defendant in Ohio. He *976 filed a motion challenging the court's jurisdiction over him. The Appellate Court of Illinois held that the Illinois long-arm statute:
[R]eflect[s] a conscious purpose by the Legislature to assert jurisdiction over nonresidents to the extent permitted by the due process clause and ... that the word "tortious" ... is not restricted to the technical definition of a tort, but includes any act committed in this state which involves a breach of duty to another and makes the one committing the act liable to respondent in damages. Therefore, in our opinion, the failure of the father to support an illegitimate child constitutes a tortious act within the meaning of the statute and subjects him to the jurisdiction of the Illinois courts... .
231 N.E.2d at 3.
In Nelson, the Supreme Court of Minnesota stated the following:
The doing of an act prohibited by law or the neglect to perform a duty imposed by law, resulting in damages to another, creates a legal liability, Baxter v. Coughlin, 70 Minn. 1, 72 N.W. 797 (1897), and may be denominated a tort within the scope of the long-arm statute. By failing to perform his statutory duties of support, defendant has caused foreseeable damages to complainant. Contrary to defendant's contention, complainant mother has indeed suffered injury, for, quite apart from the physical and emotional trauma of bearing the child and rearing it alone, she is faced with the financial burdens of medical and hospital bills. She is also confronted with the expense of rearing their child and possible impairment of her earning power... .
... A woman who bears an illegitimate child may not be able to establish the paternity of her child if she must initiate her action in a foreign jurisdiction. For her to be able to do so is of interest to this state, both for its citizens and for its own potential obligation of public support. But a man, whose paternity is more easily alleged than proved, may find it no less difficult to defend against a groundless accusation in a forum other than that of his own state.
216 N.W.2d at 143.
Other states, however, have rejected the theory that these acts constitute tortious conduct as contemplated by their long-arm statutes. See State, Dept. of Health & Rehabilitative Services, Office of Child Support Enforcement ex rel. Luke v. Wright, 489 So.2d 1148 (Fla. Dist. Ct. App. 1986); Bershaw v. Sarbacher, 40 Wash. App. 653, 700 P.2d 347 (1985); State ex rel. Larimore v. Snyder, 206 Neb. 64, 291 N.W.2d 241 (1980); Barnhart v. Madvig, 526 S.W.2d 106 (Tenn. 1975); State ex rel. Carrington v. Schutts, 217 Kan. 175, 535 P.2d 982, 76 A.L.R.3d 700 (1975); A.R.B. v. G.L.P., 180 Colo. 439, 507 P.2d 468 (1973); Anonymous v. Anonymous, 49 Misc.2d 675, 268 N.Y.S.2d 710 (1966).
In Bershaw, the Court of Appeals of Washington held that failure of a putative father to support his alleged child does not constitute tortious conduct. The Court's reasoning for its holding follows:
Ms. Bershaw asserts Mr. Sarbacher's failure to support Trina constitutes a "tortious act" under Washington's long-arm statute, RCW 4.28.185, citing In re Miller, 86 Wash.2d 712, 548 P.2d 542 (1976).
Faced with almost identical facts, In re Doe, 38 Wash. App. 251, 253-54, 684 P.2d 1368 (1984), distinguished In re Miller, supra, and held:

In re Miller is not dispositive because the issue of whether John is indeed the father of the child has not yet been decided. The primary issue in a paternity action is whether the defendant is in fact the father; the issue of support is ancillary. If John is not the father, he has no duty of support. Without a duty of support, he could not have committed the "tortious act" of nonsupport. We hold that a putative father's failure to support his child does not constitute a "tortious act" under our long-arm statute.

*977 (Citations omitted.)
700 P.2d at 349 (emphasis added).
In A.R.B. 507 P.2d 468, the Supreme Court of Colorado held that "[w]e have considered the numerous definitions of a `tort' and `a tortious act' and none of them, by the application of the most liberal rules of construction, would tolerate the inclusion of an act of sexual intercourse between consenting adult parties, which, in the absence of allegations showing otherwise, is the nature of the act involved in this paternity case." Id. at 469.
In Carrington 535 P.2d 982, the Supreme Court of Kansas also rejected the theory that the act constitutes tortious conduct. Although Kansas' long-arm statute was based on the Illinois long-arm statute which was construed to reach such conduct in Poindexter, Kansas used reasoning similar to that in Bershaw, to determine that the long-arm statute did not confer personal jurisdiction over the defendant. In so holding, the Kansas court stated the following:
If the district courts of Kansas are to acquire jurisdiction of nonresident putative fathers in paternity actions commenced in this state to establish paternity and to compel support of a minor child, the Legislature should provide for such extraterritorial jurisdiction by proper amendment to our long-arm statute, thus affording the exercise of jurisdiction over such nonresident defendants to the extent permitted by the due process clause of the Fourteenth Amendment to the Constitution of the United States and Sections 1 and 2 of the Kansas Bill of Rights.
535 P.2d at 987 (emphasis added).
Some states have statutes specifically providing jurisdiction in cases such as the one at hand. See Cochran v. Wallace, 95 N.C. App. 167, 381 S.E.2d 853 (1989); County of Humboldt v. Harris, 206 Cal. App.3d 857, 254 Cal. Rptr. 49 (1988).

C.M.R.C.P. 4(c) and Minimal Contacts.
Finally, Chandler contends that the chancery court was authorized to exercise personal jurisdiction over Jones because Jones was served personal process as provided by Rule 4(c)(1) and/or 4(c)(2) of the Mississippi Rules of Civil Procedure and there were sufficient minimum contacts between Jones and the State of Mississippi.
The lower court apparently agreed with Chandler. In denying Jones' motion to dismiss, the Chancellor held:
The matter before the Court is the Defendant's Motion to Dismiss for lack of jurisdiction of this Court.
The Court believes that Rule 4(c)(1) and (2) of the Mississippi Rules of Civil Procedure, which provide personal service of process, say in this case that the Defendant was personally served.

Mr. Edwards has certainly presented a well-reasoned argument, and the Court is inclined to agree with him that the issue is sufficiently raised in his pleadings. However, the Court does not believe that particular aspect to be controlling.
It would appear to the Court that the Defendant has been personally served pursuant to Rule 4(c)(1) and/or (2), and for that reason the Motion to Dismiss is overruled and denied.
(emphasis added)
Compliance with Rule 4, however, does not in and of itself confer personal jurisdiction upon the chancery court. There must be a statute conferring such jurisdiction. This is supported by the Comment to Rule 4:
Rule 4(c)(1) provides for service by a process server and Rule 4(c)(2) provides for service by a sheriff. There is no limit to the territorial jurisdiction of a process server who may serve the summons anywhere in the world. A sheriff, however, may serve the summons only within his county. However, the mere service of the summons and complaint does not, of itself, resolve all questions as to jurisdiction over the person of the defendant, and any such questions may be raised at appropriate times. (emphasis added)
Although minimum contacts did exist between Mississippi and Jones, the lower *978 court erred in exercising personal jurisdiction over Jones through Rule 4.

CONCLUSION
I am of the opinion that the lower court did not have personal jurisdiction over Jones and the judgment must be reversed and rendered. The child support action is ancillary to the paternity action. This does not constitute tortious conduct as contemplated by Miss. Code Ann. § 13-3-57 (Supp. 1990). The legislature, not this Court, should amend the long-arm statute to provide for such jurisdiction, if it wants to protect the interests of illegitimate children in this situation.
Therefore, I dissent.
HAWKINS, P.J. and SULLIVAN, J., join this dissent.
NOTES
[1] Chandler relies on Arrow Food Distributors, Inc. v. Love, 361 So.2d 324 (Miss. 1978), and McMillan v. Tate, 260 So.2d 832 (Miss. 1972), both of which were decided under a procedural scheme supplanted on January 1, 1982, by the Mississippi Rules of Civil Procedure.
[2] See also, Hertz Corporation v. Domergue, 293 So.2d 463 (Miss. 1974).
[3] In relevant part, Section 13-3-57 reads:

Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi.
* * * * * *
The doing of such business, or the engaging in any such work or service in this state, or the making of such contract, or the committing of such tort in this state, shall be deemed to be a signification of such nonresident's agreement that any process against it or its representative which is so served upon the secretary of state shall be of the same legal force and effect as if served on the nonresident at its principal place of business in the state or country where it is incorporated and according to the law of that state or country.
* * * * * *
The provisions of this section shall likewise apply to any person who is a nonresident at the time any action or proceeding is commenced against him even though said person was a resident at the time any action or proceeding accrued against him.
[4] This history is presented nicely in Burnham v. Superior Court of California, 495 U.S. 604, ___, 110 S.Ct. 2105, 2110-2114, 109 L.Ed.2d 631, 638-43 (1990); see also, Developments In The Law  State Court Jurisdiction, 73 Harv.L.Rev. 909, 915-18 (1960).
[5] A non-resident defendant may obtain pre-trial consideration of his Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction and may litigate the factual questions inherent therein via live testimony or affidavits. If the court thereafter finds facts that sustain the defense, whether on federal or state amenability grounds, it should dismiss, as the presumption implied in the "well-pleaded-allegations-of-the-complaint" rule has spent its force and vanished. See Rule 301, Miss.R.Ev. Here Jones sought and obtained such a pre-trial hearing. Curiously, he called only Velma Hodges as an adverse witness. Jones did not, for example, take the stand and deny that he had ever been in Mississippi. The Court below made no findings of fact taking this case out of the well-pleaded complaint rule, nor did Jones offer anything having that effect.